## STOUT *v*. COMMERCIAL UNION ASSURANCE CO.[*]

*(Circuit Court, D. Indiana.   June 27, 1882 )*

INSURANCE AGAINST FIRE—CONTRACT—CONDITIONS CONSTRUED.

Conditions and warranties in policies, especially where numerous and in fine print, should be strictly construed against the insurer; and if, in reading the written part of the policy in connection with the condition or warranty, there be doubts *as to whether it was intended to include a certain hazardous article in* the risk, the assured are entitled to the benefit of the doubt.

*Claypool & Ketcham* and *Martindale & Son,* for plaintiff.

*Harrison, Hines & Miller* and *McDonald & Butler,* for defendant.

GRESHAM, D. J.   The Commercial Union Assurance Company, of London, issued a fire policy to the plaintiffs for $5,000, for one year, from the second day of July, 1880, for a premium of $———.   The property covered was described in the written part of the policy, which reads thus: "$5,000 on their stock in trade as wholesale grocers, comprising all articles kept for sale in such stocks, in, etc., Nos. 107 and 109 South Meridian street, Indianapolis, Indiana; $50,000 total insurance.   Permission is hereby granted the assured to keep 50 pounds of gunpowder on the premises without prejudice to this policy."   It is provided in the printed part of the policy that "if the assured shall keep or use gunpowder, fire-works, nitro-glycerine, phosphorus, saltpeter, nitrate of soda, petroleum, naphtha, gasoline, benzine, benzole, or benzine varnish; or keep or use camphene, spirit gas, or any burning fluid or chemical oils, without written permission in this policy, then, and in every such case, this policy shall be void."   Also, that "this company shall not be liable   *   *   *   for any loss caused by the explosion of gunpowder or any explosive substance."   The building and its contents were destroyed by fire during the life of the policy, and this suit is brought to recover the amount of the risk.   The insurer sets up in the third paragraph of its answer that at and before the fire the assured had in the building described in the policy 218 pounds of saltpeter, without the insurer's written consent in the policy.   To this paragraph the assured replies that saltpeter is an article in a wholesale grocer's stock; that it is usually kept for sale as a part of such stock; that they had on hand at the time the insurance was taken, and at the time of the fire, for sale to their customers, and for no other purpose, from one to three hundred pounds of saltpeter—that being a reasonable

[*]Reported by Chas. L. Holstein, Esq., U. S. Dist. Att'y.

amount and no more than their trade demanded; and that the insurer knew the assured were carrying on the business of wholesale grocers at the time the risk was taken. The insurer demurs to this paragraph of the answer.

Does the written part of the policy, describing what was intended to be covered by the risk as "all articles kept for sale in such stocks," limit or modify the condition or warranty contained in the printed part, which prohibits the keeping of saltpeter? There would seem to be no difficulty in answering this question in the affirmative, if permission were not given in the written part of the policy to keep gunpowder, that being one of the prohibited articles. There is weight in the argument that, by expressly mentioning gunpowder, and excepting it from the condition, that it was to remain in force as to the other prohibited articles. On the other hand, the insurer knew at the time the risk was taken that it was insuring a stock of wholesale groceries, and in describing the property insured language was employed broad enough to include all articles kept for sale in such stocks. Besides this, the demurrer admits that saltpeter is usually kept for sale by wholesale grocers, and that it was in fact an article in the stock of the assured at the time the risk was taken. The keeping of saltpeter, under these circumstances, should not be allowed to avoid the policy. The assured are entitled to a liberal construction of the contract, the written part of which embraces all articles belonging to a wholesale grocer's stock. Saltpeter, as already stated, belongs to such stocks; therefore, it may be said written permission was given in the policy to keep saltpeter.

Insurance companies, it is known, are in the habit of preparing their contracts to suit themselves, and where doubts arise in their construction it is not unfair to resolve these doubts against the insurer. Conditions and warranties in policies, especially where numerous and in fine print, should be strictly construed against the insurer, and if in reading the written part of the policy in suit, in connection with the condition or warranty which is relied on by the insurer, there be doubts as to whether it was intended to include saltpeter in the risk, the assured are entitled to the benefit of these doubts. *Franklin Ins. Co.* v. *Brock,* 57 Pa. St. 134; *Grant* v. *Lexington Fire Ins. Co.* 5 Ind. 23; *Niagara Falls Ins. Co.* v. *De Graff,* 12 Mich. 124; *Elliott* v. *Hamilton Mut. Ins. Co.* 13 Gray, 139; *Viele* v. *Germania Ins. Co.* 26 Iowa, 9; *Hall* v. *Ins. Co. N. A.* 58 N. Y. 292; *Citizens' Ins. Co.* v. *McLaughlin,* 53 Pa. St. 485; *Archer* v. *Merchants', etc., Ins. Co.* 43 Mo. 432.

The case of *Steinbach* v. *Ins. Co.* 13 Wall. 183, is relied on in support of the demurrer. That was a suit on a policy against fire, and the subject of insurance was described in writing in the body of the policy as follows: "On his stock of fancy goods, toys, and other articles in his line of business contained in the brick building situated, etc., and now in his occupancy as a German jobber and importer. Privileged to keep fire-crackers on sale." The premium paid was 40 cents on the $100. Among the second class of hazards, classed as hazardous, No. 2, were enumerated fire-crackers in packages, and it was stated that they added to the rate of premium 10 cents on the $100; and classed as especially hazardous were fire-works, which added 50 cents or more to the rate, and to be covered were to be especially written in the policy. The fire originated in fire-works which the assured had in his store for sale, without written permission in the policy, and this being admitted he offered to prove on the trial "that fire-works constituted an article in the line of business of a German jobber and importer." The evidence was rejected, and the assured took the case to the supreme court on a writ of error, where it was affirmed. The assured insisted in this case that the language "other articles in his line of business as a German jobber and importer" covered fire-works. It was not claimed that fire-works were covered by the policy because they were an article in a stock of fancy goods and toys in the business of a German jobber and importer, but because they were an article in the line of Steinbach's business. If the business of importing and jobbing fancy goods and toys from Germany was a well-understood trade in well-known articles, like the business of wholesale grocers, Steinbach's business might embrace all or less than all the articles belonging to such a business.

In the case at bar saltpeter is claimed to be covered by the policy; not because it was an article in the stock and business of the assured, but because the subject insured was a stock of wholesale groceries, comprising all articles kept for sale in such stocks, one of which was saltpeter. I think the cases are distinguishable. And, further, fire-works were classed in *Steinbach* v. *Ins. Co.* as specially hazardous, and added 50 cents or more on the $100 to the premium. This fact seems to have had weight with the supreme court. "They [fire-works] are among the goods described as specially hazardous," say the court in the brief opinion written by Chief Justice Chase, "and add 50 cents on the $100 to the ordinary rate of insurance. It

is impossible to think they are described by the general terms used in the policy. The insurance was at the ordinary rates."

It does not appear from the policy in suit that any increased rate was expected for keeping saltpeter; and written permission being given to keep gunpowder,—a much more explosive and dangerous substance than saltpeter,—it would be unreasonable, if not unjust, to hold the policy void because the latter was kept.

The demurrer is overruled.