**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Audra H. PALMER, Appellee.**

**No. 14560.**

United States Court of Appeals
Ninth Circuit.

Oct. 19, 1956.

See also 9 Cir., 225 F.2d 876.

Scoville & Linton, Phoenix, Ariz., Bledsoe, Smith, Cathcart & Phelps, San Francisco, Cal., for appellant.

Moore & Romley, Jarril Kaplan, Phoenix, Ariz., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

On January 17, 1948 between Buckeye and Liberty, Arizona, an automobile owned and driven by Ralph E. Nollner was involved in an accident. Nollner's wife was killed in the accident and two passengers in Nollner's car, Mrs. Tressie Hillyer, and appellee, Mrs. Audra Palmer, were injured.

Both Mrs. Hillyer and Mrs. Palmer brought suit against Mr. Nollner in the Superior Court of the State of Arizona in and for the County of Maricopa. Appellant, State Farm Mutual Automobile Insurance Company, had issued previously to Mr. Nollner an automobile liability insurance policy, and upon due notice of the accident and suits filed, preparations were commenced for the defense or settlement of the suits. A settlement was made with Mrs. Hillyer, the daughter of Mr. Nollner, for $1,750 and her suit was dismissed. The suit by Mrs. Palmer was not settled and on January 18, 1951 judgment was entered against Nollner in the amount of $27,500. Execution was returned unsatisfied on the judgment and upon demand of appellant for its policy limits ($10,000) and their refusal to pay this action was commenced in the United States District Court.

Appellant Insurance Company seeks to avoid its liability under the insurance policy on the ground that the insured failed to cooperate with the insurer in the defense of the action in the state court in violation of the terms of the policy. The policy provided among other things, as follows:

Conditions

\# \* \* \* \* \*

"3. Insured's Duties in Case of Loss. As a condition precedent to the enforcement of any right under this policy, the insured shall

\* \* \* \* \* \*

"(c) Assist and Co-operate with the company in investigating, securing and giving evidence, and in the conduct of suits and by attending hearings and trials as well as in obtaining reasonable repairs for the damage done to the described automobile.

\* \* \* \* \* \*

"5. Action Against Company.

"(a) With respect to all coverages no action shall lie against the Company unless, as a condition precedent thereto the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed."

The specific act of non-cooperation relied upon by the insurance company is the failure of Mr. Nollner to attend the trial of the state court action on January 11, 1951 at Phoenix, Arizona. We relate the circumstances that lead up to the failure of Nollner to attend that trial.

Mrs. Palmer's suit was originally scheduled for trial June 6, 1950 and Mr. Nollner was notified of this trial setting on May 9, 1950. The trial was scheduled to be held in Phoenix, Arizona. Mr. Nollner was at that time in Denver, Colorado acting as Public Relations Director for the Salvation Army. May 17, 1950 appellant's Phoenix counsel communicated with Nollner and asked him to be in Phoenix on May 22nd or 23rd for a deposition and then return on May 31 shortly before the other trial scheduled against him by Mrs. Hillyer. On May 23, 1950 appellant's Denver counsel took the deposition of Mr. Nollner at which time he stated that as Public Relations Director for the Salvation Army he was conducting fund raising campaigns among which was one for the Salvation Army Training College which would run until June 1st and that from June 1st to June 15th he would likewise conduct another campaign in Salt Lake City and that he could not possibly get away until July 1st as he had a third campaign in Colorado Springs, Colorado. Nollner in reply to a question put to him by appellant's counsel as to whether he would refuse to go to Phoenix for the trial stated:

"It isn't a question of refusing to go. It's a question I have to decide which is more important to me. I have to make a living and I have to decide whether that is more important or going to the trial and going out and finding something else to do. My living is more important and I have to make that decision myself."

The trial was thereafter postponed to July 13, 1950. July 3, appellant's Phoenix counsel wrote Nollner advising him of the July 13 trial setting and asking him to be in Phoenix July 10. On July 7, appellant's counsel received a phone call from Nollner in which he stated he would not be able to come to Phoenix on July 13, because he was carrying on a campaign for the Salvation Army and would jeopardize his job by leaving. July 8, the appellant's counsel received a telegram from Nollner reading:

"Regret inadvisable leave Denver next week for Palmer Trial. As it would jeopardize my position which I can not afford to lose. Hope trial can be postponed. Letter follows."

On July 12, 1950 appellant's counsel filed a motion for continuance which was granted and trial was reset for September 25, 1950. Nollner was notified of the new trial date on July 13th and Nollner apparently made arrangements for a vacation in order to enable him to be present at the trial.

Counsel for appellant had in March and May, 1950 taken the depositions of Mrs. Palmer and Mrs. Hillyer but had made no effort at that time to take the deposition of Nollner regarding the accident. Upon stipulation and at appellee's request Nollner's deposition was taken on July 21, 1950 in Denver, Colorado. In his deposition Nollner testified favorably to the appellant, in the presence of counsel for both parties, as to the accident and how it occurred. Nollner expressly denied that he had ad-

mitted to anyone that he was at fault or to blame for the collision.

On September 9, 1950 appellant's Phoenix counsel wrote Nollner that the court to whom the case had been assigned could not hear the same on September 25 and therefore reset it for December 19, 1950. December 17, 1950 Nollner wrote appellant's Phoenix counsel that he was not notified of the new trial date until it was too late to change his vacation period and that because he was in charge of field work for the four states of Montana, Wyoming, Colorado and Utah and because of the increased welfare load near Christmas he could not leave at that time. He also sent the appellant's Phoenix counsel a telegram the same date wherein he stated:

"Impossible for me to be present 19th as Christmas Welfare load Salvation Army requires all personnel here. Letter follows about later date. Regards."

Appellant's Phoenix counsel on December 17 asked for and received a continuance until January 11, 1951. On December 22, 1950 Nollner was advised of the postponement. On January 9, 1951 Nollner made reservations to fly to Phoenix on January 10. But on January 10 he wired the appellant's Phoenix counsel as follows:

"Regret inability to leave Denver today as originally planned. Two of field men ill one in hospital for operation and I would jeopardize my position by leaving. *Hope postponement can be arranged.*" (Emphasis supplied.)

After receiving this telegram appellant's counsel filed a motion for continuance on January 10. Attached to this motion was an affidavit by appellant's counsel that if Nollner were present he would testify to the facts therein contained in the affidavit; these facts were much the same as testified to by Nollner in his deposition and were favorable to appellant. Appellee's counsel offered to stipulate that Nollner if present would testify to the effect recited in the affidavit of appellant's counsel. This stipulation was refused. The court then denied the motion for continuance and advised counsel for the parties that the case would be heard the next day January 11 at 1:30 in the afternoon. January 11, appellant's counsel filed a motion to withdraw as counsel for Nollner. At the hearing on the motion appellee's counsel offered to stipulate that when the case proceeded to trial counsel for Nollner could offer Nollner's deposition in evidence, without objection; and further offered to stipulate that the jury be discharged and the case tried to the court. Counsel for appellant, who was still counsel of record for Nollner, refused the stipulations and also admitted he had already issued two or three subpoenas for witnesses to appear at the trial and that full preparation was made for the trial except for a final conference with Nollner. Counsel for appellee also asked appellant's counsel whether he wished a slight continuance of three or four days but appellant's counsel replied:

"I have made my application for continuance. It has been denied. I don't think I have the right to go any further and overrule the court's orders."

The court then granted appellant's motion to withdraw as counsel for Nollner and further granted appellee's motion that the jury be discharged and the cause proceed to the court without a jury. Trial was had that date and judgment for appellee entered on January 18, 1951. That judgment was not appealed and is now final.

In the United States District Court the trial judge in finding of fact 13 held that appellant insurance company was fully and adequately prepared to present any defense available to Nollner in the state action and to proceed with the trial of that action in his absence. The judge further found as a fact that Nollner's presence at the trial under the circumstances was neither required nor necessary and that his absence under the circumstances was excusable. As a conclusion of law the judge held that the failure of Nollner to attend the state trial

under the circumstances did not constitute a lack of co-operation with appellant insurance company in any substantial or material respect and resulted in no prejudice to defendant (appellant here) and thus Nollner did not breach any of the provisions of appellant's insurance policy.

### The Appeal.

■ Since the insurance policy was executed and delivered in Arizona and our jurisdiction is based on diversity of citizenship we must apply the applicable Arizona law. Ostroff v. New York Life Ins. Co., 9 Cir., 1939, 104 F.2d 986; Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Angel v. Bullington, 1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Standard Acc. Ins. Co. of Detroit, Michigan v. Winget, 9 Cir., 1952, 197 F.2d 97.

We note that we are here dealing with a cooperation clause whose performance is made an express condition precedent in the insurance policy.[1] We find no Arizona case squarely in point deciding the question whether or not prejudice need be shown where the performance of the condition is called a condition precedent in the policy. The Arizona cases cited by appellee are here not controlling. Berry v. Acacia Mutual Life Ass'n, 49 Ariz. 413, 67 P.2d 478, involved an insurance policy wherein proof of disability before default in the payment of premium was a condition precedent to the company's liability. The condition was excused not because there was an absence of prejudice because of its non-performance, but rather because it was *impossible* for the insured to give notice because of recurring period of consciousness, semi-consciousness, and unconsciousness. The instant case does not involve the doctrine of impossibility of performance. The Arizona cases of Massachusetts Bonding & Ins. Co. v. Arizona Concrete Co., 1936, 47 Ariz. 420, 56 P.2d

188, 189 and Watson v. Ocean A. & G. Corp., 28 Ariz. 573, 238 P. 338 are likewise not in point because those cases involved conditions in which it was not stated in the policy the effect of failure to perform the conditions. In the instant cases the conditions are expressly called conditions precedent to the company's liability.

There is a wide divergence of opinion in other jurisdictions as to whether prejudice is necessary in order to enable an insurance company to avoid liability where there is some failure to co-operate by the insured. Earlier California cases made a showing of prejudice from non-cooperation a condition precedent to a successful defense on that ground. Panhans v. Associated Indemnity Corporation, 1935, 8 Cal.App.2d 532, 47 P.2d 791; Wormington v. Associated Indemnity Corporation, 1936, 13 Cal.App.2d 321, 324–325, 56 P.2d 1254. But later California cases indicate that the question is still open. Purefoy v. Pacific Automobile Indemnity Exchange, 1935, 5 Cal.2d 81, 53 P.2d 155; Valladao v. Fireman's Fund Indemnity Co., 1939, 13 Cal.2d 322, 89 P.2d 643. For cases in other jurisdictions requiring prejudice see: State Farm Mutual Automobile Ins. Co. v. Koval, 10 Cir., 146 F.2d 118; Harris v. State Farm Mutual Automobile Ins. Co., 6 Cir., 1956, 232 F.2d 532; Elba v. Thomas, La.App.1952, 59 So.2d 732; Oberhansly v. Travelers Insurance, 1956, 5 Utah 2d 15, 295 P.2d 1093; Hynding v. Home Acc. Ins. Co., 1932, 214 Cal. 743, 7 P.2d 999, 85 A.L.R. 13; Roberts v. Commercial Standard Insurance Co., D.C.Ark.1956, 138 F.Supp. 363; MacClure v. Accident & Casualty Ins. Co., 1948, 229 N.C. 305, 49 S.E.2d 742. For cases indicating prejudice need not be shown see: Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443, and cases cited in annotations at 72 A.L.R. 1468, 98 A.L.R. 1475, and 139 A.L.R. 793.

---

1. For an excellent discussion of the confusion that has arisen out of the distinction between conditions precedent and conditions subsequent, see: MacClure v. Accident & Casualty Ins. Co., 1948, 229 N.C. 305, 49 S.E.2d 742. See also Williston on Contracts, Vol. 3, sec. 667A, p. 1919.

■ But all cases and authorities appear to be in agreement that the non-cooperation must have been material. Standard Acc. Ins. Co. of Detroit, Michigan v. Winget, 9 Cir., 197 F.2d 97, 103. It is said in 29 Am.Jur., Insurance, § 789 (page 600):

"To constitute a breach of a co-operation clause by the insured, however, there must be a lack of co-operation in some substantial and material respect, a technical or inconsequential lack of co-operation or a misstatement to the insurer is immaterial in such respect. * * *"

It is also said in 29 Am.Jur., Insurance, § 795 (page 602):

"It is generally held that the unreasonable refusal or failure of the insured to testify at the trial when he is a material or important witness is a breach of a clause of a liability insurance policy requiring the co-operation of the insured. However, to establish a breach of such a clause upon the fact that the insured failed to appear at the trial, the insurer must show more than mere absence, since absence, if excusable or justifiable, as distinguished from absence which is premeditated and wilful, or without good reason, does not in itself constitute lack of co-operation. * * *"

■ Because of the facts of this case we do not find it necessary to answer the question whether prejudice need be shown. We are in accord with the holding of the trial judge that the failure of Nollner to attend the trial was not a material failure to co-operate and Nollner's attendance was not necessary or required; and his absence under the circumstances was excusable. Of course a material failure to co-operate is closely akin to prejudice.

There are several reasons why we reach this decision. The insurance company here had the deposition of Nollner. In that deposition he testified most favorably to the company. He denied that he had made any admissions against interest to anyone. Also the insurance company when asking for the final continuance by affidavit stated the things to which Nollner would testify. Appellee's counsel was willing to stipulate that Nollner would so testify but this stipulation was refused. Appellant's counsel admitted that he was prepared for trial except for a final conference with Nollner and that he had subpoenaed witnesses. We have also read the various statements made by Nollner in regard to his non-appearances and we do not find any language contained therein which would clearly indicate that Nollner was deliberately avoiding the trial. Even his last refusal was not a complete refusal to appear. He told appellant's counsel why he could not attend the trial. And significantly he said in his telegram to appellant's counsel " * * * Hope postponement can be arranged * * *" It is true that the court denied a further continuance on January 10. But on January 11, while still counsel of record for Nollner, appellant's Phoenix counsel refused an offer by appellee's counsel to continue the case for three or four days. The company had no positive proof that Nollner would not appear within three or four days if such an extension were agreed upon by the parties.

■ This court in Standard Acc. Ins. Co. of Detroit, Michigan v. Winget, 9 Cir., 197 F.2d 97, 103, a case involving a cooperation clause but dealing with a misstatement by the insured, said:

"These cases emphasize the fact that cooperation implies not an abstract conformity to ideal conduct, but a pragmatic question to be determined in each case in the light of the particular facts and circumstances. And when a jury, weighing the circumstances surrounding a particular event, has concluded that there is no lack of cooperation, and the trial judge, who heard the same testimony, has accepted the verdict, it should not be disturbed on appeal."

We are of the opinion that the quoted language is equally applicable to the instant case.

The recent case of Oberhansly v. Travelers Insurance Co., 1956, 5 Utah 2d 15, 295 P.2d 1093, is somewhat analogous to the instant case since the insured there likewise failed to attend the trial because he thought to do so would jeopardize his chances for promotion. It was therein said, 295 P.2d at page 1096:

"Here the insured because of financial difficulties had to seek employment outside the state. While he was in Utah he fully cooperated with the insurance company, reported the accident when he was sued and gave it a written statement of the facts at its request. Long before the trial the insured was informed of his new address [sic; apparently should read insurer was informed] and that insured felt his new position and chances for promotion would be jeopardized if he left to attend the trial and therefore he was not planning on coming back to Utah for that purpose. The insurance company had ample time to take his deposition had they so desired, but they did not do so. Under such circumstances it cannot be said that the insured's absence from the trial was unreasonable and unjustifiable and that the trial court erred in finding that he had not failed to cooperate with the insurance company nor did he fail to comply with the terms of the insurance policy. * * Furthermore, it cannot be said as a matter of law that LaMar Pearce was unreasonable in failing to come back to Utah for the trial when his livelihood may have depended upon his remaining on his job at that time and his version of the facts could have been presented through a deposition."

The instant case is even stronger than the cited Oberhansly case since the insurer here had the deposition of Nollner, and counsel for appellee was willing to stipulate to a further extension of time which might have enabled Nollner to be present.

 Whether Nollner's actions and conduct constituted a failure to co-operate was a question of fact for the trial judge. The judge determined that fact in favor of the insured and we do not feel constrained to upset that finding of fact based on the evidence before us.

Judgment affirmed.