67 N.J. Super. 554 (1961)
171 A.2d 340
RUTH MILLER SUTERA, PLAINTIFF-RESPONDENT,
v.
PROVIDENT INSURANCE COMPANY OF NEW YORK, DEFENDANT-APPELLANT.
ANN NASTOI, PLAINTIFF-RESPONDENT,
v.
PROVIDENT INSURANCE COMPANY OF NEW YORK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1961.
Decided May 11, 1961.
*555 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Leo D. Burrell argued the cause for defendant-appellant (Mr. Fred W. Jung, Jr., attorney).
Mr. Stephen Mongiello argued the cause for plaintiff-respondent Ann Nastoi.
Mr. John E. Wolf argued the cause for plaintiff-respondent Ruth Miller Sutera (Mr. Lawrence Wolfberg and Messrs. Steisel, Gundersdorf, Wolf and Sorrentino, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs brought separate actions against the defendant insurance company to recover on its contract to insure Walter Kauger and Grace Kauger (his wife) on a standard automobile liability insurance policy. The actions are predicated on judgments previously recovered in the Hudson County District Court as follows: (a) in favor of plaintiff Ruth Sutera for $1,000, and (b) in favor of plaintiff Ann Nastoi for $1,200, against Grace *556 Kauger in each instance, for personal injuries sustained by plaintiffs in an automobile accident which occurred December 9, 1956, involving a collision between the Kauger car and another owned and operated by one Guarraci. Plaintiff Nastoi was a passenger in the Kauger car and plaintiff Sutera a passenger in the Guarraci vehicle.
Defendant defended the present actions, which were consolidated, on the grounds of fraud and failure of cooperation by its assured, Grace Kauger. At the conclusion of all the proofs the trial court, sitting with a jury, granted motions for judgments in favor of the plaintiffs, and denied a motion for judgment in favor of the defendant in both actions.
Paragraph 1 of the "Conditions" of the policy requires the insured to give notice of an accident to the company, including reasonably obtainable information respecting the time, place and circumstances of the accident and names of available witnesses. Paragraph 18 of the conditions provides that the insured shall cooperate with the company and shall assist in securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. Paragraph 8 is to the effect that no action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of the policy.
The defense of the claims at the trial was based primarily upon the testimony of Fred W. Jung, Jr., a lawyer, and Edward Curran, Jr., an investigator employed by defendant.
Jung's testimony was to the following effect. Early in 1957 he was retained by the defendant company to defend the negligence actions brought by the present plaintiffs in December 1956 insofar as defendant's assured, Grace Kauger, was involved. Mrs. Sutera (then Ruth Miller), joining as co-plaintiff with Guarraci, had sued Grace Kauger as the operator of the Kauger vehicle; Miss Nastoi had sued Guarraci and Mrs. Kauger as the respective operators of the vehicles involved. The cases were consolidated for trial. Jung first filed a counterclaim against Guarraci for contribution *557 as a joint tortfeasor. Shortly thereafter he arranged with Mrs. Kauger to represent her personally on a counterclaim against Guarraci for her personal injuries and damages to her car. At that time Mrs. Kauger informed him that she was the driver of her car at the time of the accident. Somewhere between one and three months prior to the taking of depositions in the case (taken May 24, 1957), an attorney for one of the plaintiffs informed Jung that it was his information that Mrs. Kauger was not driving her car at the time of the accident. Jung promptly questioned her about this, but she insisted she had been the driver, saying, "They are lying * * *. I was driving. There was no man in the car." When the deposition of Guarraci was taken, on the date mentioned, he testified that "* * * there was a man driver at the seat." Mrs. Kauger and another woman, he said, were in the front seat. Again Jung questioned Mrs. Kauger closely: "You have to tell me the truth * * *. Was there anyone else in the car?" She answered: "Absolutely not * * *. I was driving the car." On the same occasion the depositions of plaintiff Nastoi were taken, and she, too, testified that Mrs. Kauger was the driver of the car. Based upon what Mrs. Kauger told him, Jung had her sign sworn answers to interrogatories to the effect that she was the driver of the car. He reviewed the matter with her again a week or ten days later and she adhered to her story. He said he then "believed her."
The negligence case was reached for trial in the District Court June 2, 1958. The judge in chambers asked the parties concerning the possibility of settlement. When Jung consulted Mrs. Kauger concerning her views as to this, she said to him, "Mr. Jung, I can't hold this back any longer, I have got to tell the truth." She then told him that she was not driving the car that night; that she owned a tavern in Union City; that plaintiff Nastoi, who was a friend and customer of hers, and a woman named Rose Pisanello were there and were in the company of two men; that all five got into the Kauger car; and that at the time of the accident *558 one of the men, named Esposito, was driving, with Mrs. Kauger and the Pisanello woman alongside in the front seat, and Miss Nastoi and the other man in the back seat. She also told Jung that "when the accident happened she ordered both the driver of her car and the man in the back seat out and to beat it before the police came." Previously she had "repeatedly" told Jung that there were only three people in the car, "herself, Nastoi and Pisanello." Earlier the defendant's investigators had interviewed Miss Nastoi and Miss Pisanello, but they had refused to give any information at all.
Upon being confronted with this situation, Mr. Jung took the matter up with the District Court Judge and requested that a mistrial be declared (a jury had been drawn). The court granted the application and adjourned the trial to a new date. A transcript of the discussion in chambers indicates that the judge verified from Mrs. Kauger directly, in the presence of counsel for all parties, what she had just told Jung, including the admission that her answers to interrogatories and depositions were false insofar as she had there sworn she was the driver of the car. She told the judge that one Esposito was driving the car. Soon thereafter Jung, with leave of court, withdrew as attorney for Mrs. Kauger, and the defendant insurance company promptly disclaimed liability on the policy on grounds of failure of cooperation and fraud by its assured. Another attorney was substituted for Mrs. Kauger, and the subsequent trial of the negligence action resulted in judgments against her of the description noted above.
There was also testimony by the defendant's investigator, Curran, to the effect that he interviewed Mrs. Kauger December 13, 1956 and took a statement from her, which she signed, wherein she said she was driving the car "and, in addition, described various acts that she did in the operation of the car." She said she was driving two "girlfriends" home, Miss Nastoi and Miss Pisanello. He saw her four or five times thereafter, and she never changed the story. *559 Curran also verified Jung's testimony as to the changed version by Mrs. Kauger on the day first set for trial. At that time she told Curran that one Esposito was the driver of the car. He testified that he subsequently interviewed Esposito, but when the court asked the witness what Esposito said, plaintiffs objected, and the objection was sustained.
Plaintiffs submitted no proof in contradiction of the essence of the foregoing testimony. None of the participants in the accident testified.
In granting plaintiffs' motions for judgment at the conclusion of the proofs, the trial judge stated that there was no evidence to establish fraud, merely inconsistent statements by the assured; that there was liability under the policy "whether it was the assured or anyone with her consent" who was driving; that the judge could not conclude from the proofs who was the actual operator of the car; that there was "ample time and ample opportunity" for the company to ascertain "easily" who was the operator; that on the record before him Mrs. Kauger was the driver; and that "therefore" the motions would be granted.
Without discussing the fraud aspect of the defense, it is entirely clear to us that the court overlooked the defense of failure of cooperation, and that the uncontradicted facts bespoke failure of cooperation by Mrs. Kauger as a matter of law, thereby relieving the insurance company of any further liability on the policy. The motion of defendant for judgment of involuntary dismissal should have been granted on that ground.
It would be supererogation for us here to expatiate on the law pertinent to the subject at hand in view of the thorough and lucid exposition thereof by Judge (now Mr. Justice) Haneman in the recent case of Pearl Assur. Co., Ltd. v. Watts, 58 N.J. Super. 483 (App. Div. 1959). The court there stated (at pp. 490, 491):
"Cooperation clauses generally have been held to be material provisions of the policy and compliance therewith a condition precedent to the carrier's liability. 8 Appleman, Insurance Law and Practice, *560 § 4771, p. 151 (1942); Bradford v. Commonwealth Casualty Co., 10 N.J. Misc. 301 (Sup. Ct. 1932). They are designed to protect the interests of the insurer and prevent collusion between the insured and the injured person. Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 376 (E. & A. 1938). In order to relieve the insurer of liability under the policy, the cooperation clause must be deliberately breached in a material or essential particular.
`Failure to co-operate on some inconsequential or immaterial matter cannot be set up as a defense, nor can it hardly be a ground for a defense where an insured makes an honest mistake.'
Bradford v. Commonwealth Casualty Co., supra, 10 N.J. Misc., at pages 306, 307. Cooperation and assistance of the insured requires a fair, frank and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense. 8 Appleman, op. cit., § 4774, p. 159. Hence, a deliberate falsehood to the insurance company by the insured, on a subject material to the assured's liability to a claimant [or] as to the company's defense of such a claim, would constitute a breach of the cooperation clause." (Emphasis by the court)
Our insertion of the bracketed "[or]" in the last paragraph of the excerpt quoted supplies an inadvertent omission in the original opinion. Thus, if there is a deliberate falsehood to the company by the assured on a matter or in a respect material or essential either to liability of the assured to the claimant or to the defense of the claim, there is a breach of the cooperation clause forfeiting the policy coverage.
The evidence in this case as to Mrs. Kauger's behavior in respect of cooperation stands unrefuted. It is clear to us that whichever version of the situation of the occupants of the Kauger car therein at the time of the accident is accepted as an hypothesis, whether Mrs. Kauger's original version to the defendant's representatives or her drastically revised story the day the negligence case was first set down for trial, the conclusion is not fairly escapable that the company was materially prejudiced in making the best defense the circumstances would otherwise have permitted, or in effecting an advantageous settlement, and this entirely apart from the question whether it would have lost the negligence suit in consequence thereof.
*561 Let us first take the hypothesis of the truth of her last story. On that assumption, the company was misled against interviewing the driver and other male occupant of the car as soon as possible after the accident, and against giving consideration to whether their depositions should also be taken at an early date. It needs no extended exposition to establish that such procedure would have represented standard and efficient conduct of the defense side of these negligence actions; and that the company was placed in an extremely disadvantageous position, in respect of an effective defense, to have been led to rely for months on the assured's false story, while the preparation of the case of one of the plaintiffs, at least, was proceeding on the basis of knowledge of the true facts as to the identity of the driver, not to mention Mrs. Kauger's vulnerability as a witness inherent in the conflicting (and false) answers to interrogatories and conflicting testimony in the depositions.
As we said in an analogous situation (failure of compliance with notice provision of policy) in Miller v. Zurich Gen. Accident and Liability Ins. Co., 36 N.J. Super. 288, 296 (App. Div. 1955):
"* * * A difference of weeks (and sometimes of days) in notification to an insurer of an accident may well spell the difference between its ability advantageously to prepare its defense or settle a claim and its relegation to a less favorable position. Weller v. Atlantic Casualty Insurance Co., supra (128 N.J.L. [414], at p. 416). * * *"
The same conclusion of prejudice to a proper and efficient defense of the claim must be drawn if one assumes that Mrs. Kauger's first version was correct and her last-minute recantation untrue. It is difficult to see how the company representatives could have been expected to go to trial, either on the date set or at any early adjourned date, with its assured apparently intending to go on the stand and testify to a newly contrived, fictitious version of the facts, which would have stamped her assumedly truthful depositions *562 and answers to interrogatories as false and destroyed her credibility at trial just as completely as if the contrary hypothesis were the true one. A more embarrassing defense dilemma would be hard to conceive.
Whatever the assured's motivation for the original story or the later change, or whatever the true version of the facts in question, the uncontradicted proofs before the trial court could not have fairly permitted a jury to find that either recital of facts by Mrs. Kauger to the defendant's representatives, the earlier or the later, was other than deliberate. Since one or the other version was false, and both deliberate, our conclusions above as to the deleterious effect of the two, standing together, upon the making of a reasonably efficient defense against, or advantageous settlement of the claims of the plaintiffs, must yield a holding that the assured breached the policy, lost its protection, and thereby deprived the present plaintiffs of recourse upon it, as they stand in her shoes. Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 378 (E. & A. 1938); Miller v. Zurich Gen. Accident and Liability Ins. Co., supra (36 N.J. Super., at p. 297).
The foregoing application of the Watts decision, supra, to the facts at hand finds general support in the authorities. See, as to conflicting accounts by an insured as to who was driving the car, Quisenberry v. Kartsonis, 297 S.W.2d 450 (Mo. Sup. Ct. 1956); Redler v. Travelers' Ins. Co., 342 Mo. 677, 117 S.W.2d 241 (Sup. Ct. 1938); Allegretto v. Oregon Automobile Ins. Co., 140 Ore. 538, 13 P.2d 647, 648, 649 (Sup. Ct. 1932); Roberts v. Indemnity Ins. Co. of North America, 114 W. Va. 252, 171 S.E. 533 (Sup. Ct. 1933); Brogdon v. American Automobile Ins. Co., 290 Mich. 130, 287 N.W. 406 (Sup. Ct. 1939). Cf. Rochon v. Preferred Acc. Ins. Co. of New York, 114 Conn. 313, 158 A. 815 (Sup. Ct. Err. 1932). See the extensive annotation in 34 A.L.R.2d 264 (1954).
In the Quisenberry case, supra, the court said, and we concur (297 S.W.2d, at p. 454):
*563 "* * * in our view, a showing of prejudice, if that be necessary, cannot mean that the insurer must show that it sustained a pecuniary loss or that the jury's verdict would have been different if the true facts had been disclosed. It is prejudice to the insurer in the preparation and defense of the case which is in question."
Defendant argues that the court erred in allowing into evidence the transcript of the June 2, 1958 proceedings in the chambers of the District Court judge. It was stipulated in the pretrial order that the transcript might be offered, subject to "relevancy or materiality." At the trial, the only objection made was to the reading of Mrs. Kauger's answer to a question by the District Court judge, to the effect that James Esposito was driving the car, as hearsay. However, it was not hearsay, since it was offered as evidence of a part of the conduct of the assured claimed to constitute failure of cooperation, a fact material to the defense of the present action, and binding in that respect upon the plaintiffs herein, as standing in the shoes of the assured.
Judgment reversed and the cause remanded with directions that judgment be entered in favor of the defendant dismissing the actions.