MOTORISTS MUTUAL INSURANCE COMPANY v.
JOHNSON, ADMRX.

[No. 19,476. Filed July 14, 1966. Rehearing denied September 28, 1966. Transfer denied December 6, 1966.]

*Emerson Boyd, Robert C. Riddell* and *Locke, Reynolds, Boyd & Weisell,* of Counsel, of Indianapolis, and *Christian, White, Waltz & Klotz,* of Noblesville, of counsel, for appellant.

*Addison M. Dowling,* of Indianapolis, *Russell I. Richardson,* of Lebanon, *Frank W. Campbell,* of Noblesville, and *Stewart and Richardson,* of Lebanon, *Campbell, Campbell,*

*Malan & Kyle,* of Noblesville, and *Albert W. Ewbank,* of Indianapolis, of counsel, for appellee.

WICKENS, P.J.[1]—Two separate trials involve the parties and matters here. Appellee first brought a suit for wrongful death of her decedent and recovered a judgment against William Farley and William Gammon. Allegations in that complaint are that Farley owned a motor vehicle and Gammons was operating it with Farley's knowledge and consent, when he carelessly struck and killed the decedent. Judgment was against, both of these defendants.

The second action was a suit by appellee against appellant, an insurance company. In it appellee, among other statements, charged that appellant insured Farley and his automobile for public liability as provided for in a certain insurance policy; that appellee had obtained the judgment against Gammon and Farley, as mentioned, which judgment was unpaid despite demand for payment made on the insurer; that appellant became and was legally obligated to pay the liability of the insured not exceeding $15,000. Also, appellee alleged that insurer had provided the attorneys who appeared in the first action for Farley, but had refused to so appear for and defend Gammon.

By answer in the second suit appellant, insurer, admitted the insurance contract but asserted that coverage was voided as to Farley by his certain acts set forth, which conduct amounted to failure to cooperate and violation of policy terms. As to Gammon the special answer alleged that he failed to tender his defense thus giving insurer no cause or opportunity to defend him, and, therefore, no protection was extended to him by the policy.

A resume of the facts shows that Gammon was operating the motor vehicle owned by Farley which was insured by appel-

---

1. For Appellate Court opinion of October 4, 1963, see: Motorists Mutual Insurance Company v. Johnson, 192 N. E. 2d 769.

For Supreme Court opinion of May 18, 1964, see: Motorists Mutual Insurance Company v. Johnson, 245 Ind. 316, 198 N. E. 2d 605.

lant at the time appellee's decedent was struck and killed. Insurer was promptly informed of the accident and conducted an investigation. Farley reported to his insurer that his vehicle was being used without his permission. Gammon, by a statement taken a few days after the accident, told the insurer that he *did* have the permission of Farley to use the vehicle.

Nearly two years later the suit was commenced by appellee against Farley and Gammon. The deposition of Gammon was taken after that and *again* Gammon asserted, now under oath, that he was operating the motor vehicle with express permission of Farley, the owner. Thereafter, no appearance having been entered for Gammon in this suit, the insurer wrote Gammon advising him that he was not entitled to representation by it and that if he did not employ counsel, judgment might be rendered against him. Thereafter Gammon was represented by personal counsel in the proceedings.

When the trial of the original action began, Farley at first failed to appear, although he had been informed of the trial date by three separate letters from the attorneys engaged for him by the insurer. But, before the trial was concluded, Farley appeared in response to a subpoena issued at the request of plaintiff-appellee. Then the attorneys engaged by the insurer undertook his defense subject to the provisions of a written reservation of rights by insurer. On the witness stand Farley changed his story and testified that Gammon *did* have his permission to use the vehicle at the time of the accident.

Both actions were tried by juries and in each the appellee recovered a general judgment.

No appeal was taken from the first judgment and there is no question of the finality of said judgment against Gammon and Farley. The appeal here is confined to the second cause of action and the decision entered therein against insurer. It questions the sufficiency of the evidence to sustain the verdict, whether the verdict is contrary to law, and certain instructions given over appellant's objection, and the refusal of the

court to give certain other instructions tendered by appellant. As to whether the verdict is contrary to law or is not sustained by sufficient evidence, we must arrive at a proper understanding of the questions raised by appellant.

Certain fundamentals stand out in a case of this kind where an injured person seeks recovery on a judgment he has obtained against an insured person and therefore is proceeding directly against an insurance company. In general, the injured person is in the legal shoes of the insured. If the insured has violated the policy requirements, the injured person would be precluded from recovery against the insurance company, But, if the insurer waived a condition precedent on the part of an insured, such condition is waived so far as the right of the injured person to recover from the insurer is involved. Likewise, if an insurer is estopped to assert a certain defense to an action by the insured, estoppel precludes use of such defense against the injured person.

7 Am Jur 2d, Automobile Insurance, § 225, p. 574, 575; 8 Appleman Ins. L. & P. § 4811, p. 164 et seq.

The policy had usual provisions requiring the cooperation of an insured person with respect to claims. The provisions we believe pertinent are:

". . . The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. . . ."

". . . In the event of an occurrence or accident, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence or accident, the names and addresses of the injured and of available witnesses."

". . . If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Policy provisions of this nature have sometimes been declared to be conditions precedent of liability on the part of the insurer. Compliance is essential in the absence of a sufficient excuse or a waiver in order to permit a recovery on the policy. *Lomont* v. *State Farm Mut. Auto. Ins. Co.* (1958), 128 Ind. App. 645, 652, 151 N. E. 2d 701.

A technical or inconsequential lack of cooperation has often been held insufficient to avoid the policy and the lack of cooperation to be sufficient must be in some substantial and material respect. Non-cooperation must be material. Prejudice must be shown by insurer. 7 Am Jur 2d, Automobile insurance, §§ 176, 181, p. 508, 509, 517. See also: 60 A. L. R. 2d 1138, 1150.

Considering the situation here as it concerns Farley, the named insured, failure of cooperation in a very material way is demonstrated. We think it hardly necessary to belabor that point. We hold that Farley failed to comply with his contractual obligations to appellant. *DeRosa* v. *Aetna Insurance Company*, 346 F. 2d 245, 247, 248 (7 Cir. 1965) ; *Potomac Ins. Co.* v. *Stanley*, 281 F. 2d 775, 779, 780, 781 (7 Cir. 1960).

Whether Farley told the truth when he first reported that Gammon did not have his permission or whether his sworn testimony at the trial to the effect that Gammon did have permission is true, at one time or the other he misled the company to its disadvantage in a very essential matter.

We are in complete agreement with those authorities which hold that there is a breach of the cooperation clause where the insured intentionally furnishes false information of a material nature either before or at the trial. *Elliott* v. *Metropolitan Casualty Ins. Co. of New York*, 250 F. 2d 680, 683 (10 Cir. 1957), 66 A. L. R. 2d 1231, 1235, 1236 cert. den. 356 U. S. 932; 2 L. Ed. 2d 762, 78 S. Ct. 774; *Ocean Accident & Guarantee Corporation* v. *Lucas*, 74 F. 2d 115, 117 (6 Cir. 1934), 98 A. L. R. 1461, 1464; *Salonen* v. *Paanenen*

(1947), 320 Mass. 568, 571, 71 N. E. 2d 227, 230; *Quisenberry* v. *Kartsonis* (Mo. 1956), 297 S. W. 2d 450, 453; *Sutera* v. *Provident Ins. Co.* (1961), 171 A. 2d 340, 345, 67 N. J. Super. 554, 562.

We then must consider whether appellant-insurance company became, under the contract of insurance, liable for the judgment against Gammon. If a driver operates an auto with the permission of the insured person named in the policy, the driver then becomes an "insured" under the provisions of the policy.

The policy in question provides:

". . . [T]he unqualified word 'insured' includes the named insured . . . any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by or with the permission of a named insured. . . ."

The provision quoted is from the commonly called "omnibus clause" of the policy. To some extent it has statutory origin. Acts 1935, ch. 162, § 177, p. 588, § 39-4309 Burns' 1965 Replacement.

For a recent detailed discussion of Omnibus Clause—Consent, see 4 A. L. R. 3rd 10 et seq.

It is said that this statute was enacted for the protection of the injured third party and the insured and not for the protection of the insurer. *Barker* v. *Sumney,* 185 Fed. Supp. 298, 301 (N. D. Ind. 1960).

"The purpose of the omnibus clause has generally been recognized as being a liberalizing one. Thus, it has been said that the purpose of the clause is to extend liability insurance coverage to persons other than the owner who had permission to use the car without arbitrary and definite restrictions on such use." 7 Am Jur 2d, Automobile Insurance, § 109, p. 420.

This policy provision makes the insurer liable for Gammon's driving if his status as driver was with permission of Farley.

The first trial and judgment appear to constitute a determination of that question. Permissive use was within the issues, the complaint having alleged:

"4. That at said time and place said defendant William Gammon was driving said car with the full consent, permission and authority of said William Farley."

The answer of Farley expressly denies paragraph 4 of the complaint and Gammon's answers do not appear in the transcript but it is assumed an issue on permission was formed on the complaint. As to Gammon, under that issue the effect of the verdict is that the jury found Gammon had authority of Farley to operate the vehicle. Whether such finding was a result of Farley's change in story, or whether it was because the jury believed Gammon is of no moment. Since the insurer had knowledge of the proceedings it would appear that such general judgment adjudicated the issue of permissive use.

"Ordinarily, a liability insurer is bound by the result of the litigation against the insured, provided it had notice of such litigation and an opportunity to control its proceedings. . . ." 8 Applemen Ins. L. & P., § 4860, p. 289 (1962).

"Where there has been a valid final judgment against the insured, establishing his liability to one injured or damaged by his conduct, the insurer usually must accept such judgment as conclusively establishing that liability. . . ." 20 Appleman Ins. L. & P., § 11521, p. 375 (1962).

"It is true ordinarily that one who is required to protect another from liability is bound by the result of the litigation to which such other is a party, provided the former had notice of such litigation and an opportunity to control its proceedings. A judgment against a party indemnified is conclusive in a suit against his indemnitor only as to the facts therein established. The estoppel created by the first judgment cannot be extended beyond the issues necessarily determined by it." *Hoosier Casualty Company* v. *Miers* (1940), 217 Ind. 400, 403, 404, 27 N. E. 2d 342.

Applying those rules in considering solely the Gammon phase of this matter, we hold and find that the insurer had

notice of the litigation. It had an opportunity to control the proceedings, and it was not harmed by any lack of cooperation on the part of Gammon. In accord with the opinion of Judge Tremain in the *Hoosier Casualty* case, *supra,* the judgment against Gammon, the party to be indemnified, is conclusive against his indemnitor, the appellant. The estoppel thus created is limited to the issues necessarily determined which, in this matter, include permissive use.

But appellant's stand that no liability attached to it by reason of Gammon is further based on the theory that Gammon did not tender his defense to the insurance company. In appellant's language it is said:

"[N]either he nor his attorney ever forwarded to appellant the summons or made any request for or tender of his defense."

We have looked in vain for a policy provision which might define a "tender of his defense."

We think the terms of the policy require little more in tendering a defense than expressed in the more general word "cooperation." The importance of all such policy provisions is that the insurer obtains all necessary knowledge to advisedly negotiate, defend and settle claims. Failure of compliance may breach the terms of the policy if such failure materially and adversely affects the defense, settlement or other handling of claims. Here, however, we are unable to find that the insurer was disadvantaged by the fact that Gammon may have failed to comply strictly with policy provisions.

Cooperation, it has been said, implies not an abstract conformity to ideal conduct but a pragmatic question to be determined in each case in the light of the particular facts and circumstances. *State Farm Mutual Automobile Ins. Co.* v. *Palmer,* 237 F. 2d 887, (9 Cir. 1956), 60 A. L. R. 2d 1138,

1145; *Standard Acc. Ins. Co. of Detroit, Mich.* v. *Winget,* 197 F. 2d 97, (9 Cir. 1952), 34 A. L. R. 2d 250, 258.

We also have here the possible waiver and estoppel by the insurer having declined to defend Gammon. As we noted before, when the suit against Gammon and Farley had been pending for some time and Gammon was not represented in the case by counsel, he received a letter from the attorneys for the insurer. At that time insurer had received the conflicting statements of the two defendants and it had opportunity to investigate the facts. Evidently from its knowledge then, it believed Farley and disbelieved Gammon. There are other facts and circumstances permitting one to believe either story. However, electing to believe Farley, it wrote Gammon a letter which informed him that these attorneys were representing Farley in the pending suit because of his insurance policy with appellant and it said:

". . . To our knowledge no appearance has been entered for you in either of these cases, *because such policy does not under the circumstances extend any* coverage to you. . . ." (Our emphasis.)

This letter, as evidence, was more than ample to justify the jury in finding that insurer had waived the strict provisions of the policy and was estopped to require performance. As to a refusal to defend because of the erroneous assumption of an insurer that the claim is outside of policy coverage, it has been said:

"The fact that the refusal of the insurer to defend an action against the insured based on a claim actually within the coverage of the policy results from the insurer's erroneous assumption that such claim is outside the policy coverage, although based on an honest mistake of the insurer, constitutes nevertheless an unjustified refusal rendering the insurer liable for breach of its contract." 7 Am Jur 2d, Automobile Insurance, § 166, p. 498.

Contractual provisions of a policy may be waived or the insurer may be estopped from asserting or relying upon such a provision.

"The doctrines of 'waiver' and 'estoppel' extend to practically every ground upon which an insurer may deny liability." *Travelers Insurance Co.* v. *Eviston* (1941), 110 Ind. App. 143, 154, 37 N. E. 2d 310.

It has been held in this state that a liability insurer who has breached the contract to defend cannot stand by "with arms folded" challenging the policy holder's conduct of the defense. *Frankfort, etc., Ins. Co.* v. *Lafayette Tel. Co.* (1922), 79 Ind. App. 663, 668, 129 N. E .329.

Words or conduct of an insurer inconsistent with an intention to rely on the requirements of the policy, if they lead the insured into belief that those requirements will not be insisted upon, suffice to constitute waiver. 16 Ind. Law Encyc., Insurance, § 337, p. 464; § 268, p. 366.

Even though the case of *Lomont* v. *State Farm Mut. Auto Ins. Co., supra,* holds that complying with the policy provisions relating to sending the summons to insurer, etc. are conditions precedent, such conditions have been held waived where the insurer denies any liability under the policy. The letter mentioned here could constitute such denial so far as Gammon is involved. *American Income Ins. Co.* v. *Kindlesparker* (1941), 110 Ind. App. 517, 527, 37 N. E. 2d 304. Also see: 7 Am Jur 24, Automobile Insurance, § 188, p. 527.

It is also true that conditions precedent are strictly construed against an insurer. *Stout* v. *Commercial Union Assurance Co.* 12 Fed. 554, 555, (C. C. D. Ind. 1882), 11 Biss 309; *Norways Sanatorium* v. *Hartford etc. Co.* (1942), 112 Ind. App. 241, 248, 44 N. E. 2d 192.

Many cases are cited by appellant on failure to comply with the policy as constituting conditions precedent. These are also readily distinguished from the instant case in that most such cases exhibit facts from which it can be said that insurer had no notice of matters vitally affecting its interests. As pointed out, in the opinion in *Lomont, supra,* at p. 652 of

128 Ind. App. there the insurance company first received notice of the existence of the action against its unnamed insured "over eight years after the happening of the accident." No comparison can be made here where the insurer knew the action was pending almost since its inception.

Appellant also has assigned as error the giving and refusal to give certain instructions. General mention is made of the giving of ten instructions over appellant's objections and the refusal to give 13 instructions tendered by appellant. These are not individually discussed nor is there pointed out the particular objection to each or the difference between the instructions given by the court and those tendered by appellant, which are requirements before appellant would be entitled to a detailed opinion on the various instructions.

> The Appellate Court will consider only such errors as are pointed out in appellant's brief. *Chadwick et al.* v. *Baughman et al.* (1963), 134 Ind. App. 305, 311, 187 N. E. 2d 588.

Assuming appellant's argument of the instructions to comply with Rule 2-17(e), Rules of the Supreme Court, we will discuss the instruction questions only in the same general vein that they were argued by appellant. The first objection argued in connection with instructions as a whole by appellant is that it "did not waive and was not estopped to assert its defenses." We think the instructions were in conformity with the law of waiver and estoppel herein above mentioned. We find that the trial court properly and sufficiently submitted to the jury the matters of waiver and estoppel as factual questions under the evidence of this particular case.

Appellant's second and last objection to the instructions as a whole appears to be that the court erred in stating the

appellant's defenses and in refusing to state appellant's theory of the case. Without the benefit of a recital in the argument section of appellant's brief showing some particular application of the tendered instructions to a definite theory which it is claimed was not covered by any given instruction, we are at some disadvantage in this examination. However, viewing the instructions as a unit we think the jury was given a fair resume of the case and was properly instructed as to the law relating to the whole case including defenses asserted by appellant.

As we have related, the judgment against appellant could not be permitted to stand if it were dependent alone on the original decision against Farley. To the extent that the question has been raised we have considered whether the failure of the trial court to so state constitutes error prejudicial to appellant. We find no such reversible error and we hold that such error, if any, in not relieving the jury of determining whether appellant could be held liable by reason of the condut of Farley, was not harmful to appellant.

We are of the opinion that it has not been established that the verdict was contrary to law or was not sustained by sufficient evidence or that error prejudicial to appellant occurred in the instructions.

Therefore, the judgment is hereby affirmed.

Smith, C.J., Bierly, Carson, Hunter, and Prime, J.J., concur.

Mote, J., dissents with opinion in which Faulconer, J. concurs.

## DISSENTING OPINION

MOTE, J.—I wish to dissent. Section 1, Article 7, of the Constitution of Indiana provides that:

"The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish. [As amended March 14, 1881.]"

Section 2 of said Article provides that:

"The Supreme Court shall consist of not less than three nor more than five Judges; a majority of whom shall form a quorum. They shall hold their offices for six years, if they so long behave well."

Section 4 of said Article provides that:

"The Supreme Court shall have jurisdiction, co-extensive with the limits of the State, in appeals and writs of error under such regulations and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the General Assembly may confer."

Section 5 thereof provides that:

"The Supreme Court shall, upon the decision of every case, give a statement in writing of each question arising in the record of such case, and the decision of the Court thereon."

By 1891 the burden on the Supreme Court, with the constitutional limitation of five judges, became very great. It was unable to maintain a current position in matters coming before it. There had been a growth in population; business was on the increase. The General Assembly, in its legislative wisdom and in an attempt to furnish relief to the Supreme Court of its excessive load, and in order to dispatch the decisions in appeals, as well as matters of original jurisdiction, created this, the Appellate Court of Indiana.

Since its creation in 1891, and in order further to provide relief from the accumulated mass of cases on appeal and review, the General Assemblies, from time to time, have increased the number of judges of this court to eight, provided for assignment to and decision of cases by divisions, and they have altered, by legislative enactment, the fields or areas of the law assigned not only to this court, but to the Supreme Court as well. See particularly §§ 4-202, 4-207, 4-208, 4-209, 4-212 and 4-214, Burns' Indiana Statutes Annotated, 1963 Pocket Supplement.

In its wisdom, the General Assembly, also by legislative enactment, has established the jurisdiction of this court as final except under the statutory conditions of § 4-215, Burns' Indiana Statutes Annotated, in part, as follows:

"The jurisdiction of the Appellate Court shall be final, except under the following conditions:

"First. If in any case, two [2] of the judges of either division are of the opinion that a ruling precedent of the Supreme Court is erroneous, the case, with a written statement of the reasons for such opinion, shall be transferred to the Supreme Court.

"Second. If a petition for a rehearing is filed by any losing party in any case in either of said divisions of the Appellate Court and said petition is overruled, the clerk of said court shall not certify the opinion and judgment in said case to the lower court until the expiration of thirty [30] days from the date of said ruling.

*Said party may, at any time within thirty* [30] *days after his petition for a rehearing has been overruled, file*

---

\* By Rule 2-23 of the Supreme Court, petitions to transfer shall be filed within twenty (20) days after a petition for rehearing has been denied, which said petition shall set forth briefly:

"(1)  That the Appellate Court decided the case with a written opinion, giving the date when the opinion was filed;

"(2)  That the decision of the Appellate Court was against the party seeking the transfer;

"(3)  That a petition for a rehearing was filed with the Appellate Court in time and that a rehearing was denied, giving the date of such denial.

"(4)  That the opinion of the Appellate Court:

(a)  contravenes a ruling precedent of the Supreme Court, indicating the ruling precedent;

(b)  or that the opinion of the Appellate Court erroneously deciding a new question of law, concisely stating the same;

(c)  or that the Appellate Court failed to give a statement in writing of each substantial question arising on the record and the decision of the Court thereon. If this cause is relied on, the petition shall set out or exhibit so much of the record, assignment of errors, briefs and opinions as will affirmatively disclose such failure and establish that the petitioner was prejudiced thereby."

*in the Supreme Court an application for the transfer of the case to the Supreme Court on the ground that the opinion of said division of the Appellate Court contravenes a ruling precedent of the Supreme Court, or that a new question of law is directly involved and was decided erroneously. The application shall state with particularity the ground or grounds relied on.* The party seeking to file such application shall, at the time of such filing, deposit with the clerk of the Supreme Court a cash deposit in the sum of fifty dollars [$50.00]. Upon the filing of such application, and said cash deposit, the clerk shall not certify to the lower court the opinion and judgment of said division of the Appellate Court, unless and until the Supreme Court denies the application. If the application be denied the said deposit of fifty dollars [$50.00] shall be paid by the clerk to the successful party or parties in the appeal for the defrayment of expenses incurred by said party or parties for briefing and other costs incidental to the appeal. *If the application be granted the judgment of said division of the Appellate Court is thereby vacated,* and the full amount of said cash deposit shall be returned to the party or parties making such application." (Emphasis supplied.)

It fully is recognized that since the enactment of the Acts of 1937, ch. 91, § 1, p. 459, (§ 2-4718, Burns' Indiana Statutes annotated) and as interpreted by the Supreme Court, that:

"All statutes relating to practice and procedure in any of the courts of this state shall have, and remain in, force and effect only as herein provided. The Supreme Court shall have the power to adopt, amend and rescind rules of court which shall govern and control practice and procedure in all the courts of this state; such rules to be promulgated and to take effect under such rules as the Supreme Court shall adopt, and thereafter all laws in conflict therewith shall be of no further force or effect. The purpose of this act [§§ 2-4718, 2-4719] is to enable the Supreme Court to simplify and abbreviate the pleadings and proceedings; to expedite the decision of causes; to remedy such abuses and imperfections as may be found to exist in the practice; to abolish all unnecessary forms and technicalities in pleading and practice and to abolish fictions and unnecessary process and proceedings. [Acts 1937, ch. 91, § 1, p. 459.]"

This rule vesting power, however, does not permit adoption of rules which will abolish the substantive law of the state. In *Square D Company* v. *O'Neal* (1947), 225 Ind. 49, 72 N. E. 2d 654, the Supreme Court said:

". . . This court cannot change a rule of substantive law nor could the General Assembly vest us with such legislative power."

The Supreme Court heretofore has adopted and has amended and added to, from time to time, "Rules of the Supreme Court" which, it often has been held, have the force of law. We express the objective observation that at least some of said rules are neither clear nor have they been followed and adhered to with any degree of consistency. A myriad of opinions have been handed down in an apparent effort to clarify at least some of the rules so adopted by the Supreme Court, but the net effect thereof has been a lack of consistency in expressed application. Some of the rules, at least, leave much to be desired in the matter of nicety of expression and clarity. This is true with respect to Rule 2-17. Interpretations of Rule 2-17 have been such that there has been a wide diversity of opinion, not only in its expressed sense and meaning, but also in consistency of application. As a result, there can be, in our opinion, an honest difference of opinion between judges and lawyers concerning the meaning, breadth and depth of Rule 2-17, as well as its application to the facts in any given case.

In the instant case, by its opinion filed May 18, 1964, rendered on transfer to the Supreme Court, it is stated, among other things, that "The Appellate Court's opinion does not suggest that appellant omitted a substantial verbatim provision of any relevant part of the policy, but says it (the Appellate Court) *might have been deprived 'of ascertaining* whether or not other inferences could be drawn' from some other part of the contract not set forth." (Emphasis supplied.) It will be remembered that this appeal is based entirely and ex-

clusively on *the* contract, only parts of which are in the briefs, and we suggest that no responsible lawyer would attempt an interpretation of a contract without having before him the entire instrument, as well as all pertinent data relative thereto, including by-laws to which reference therein and thereto have been made.

Under "mutual provisions" of said contract or policy, we find this provision: "While this policy is in force, the named insured is a member of the company and, as such, is entitled to the privileges provided by the by-laws of the company."

What does the last above quoted provision mean? We confess that we do not know; however, we do insist that inferences unfavorable to appellant and favorable to appellee legitimately could be drawn, particularly in the absence in the record of the by-laws of the company. We suggest that to conclude otherwise would not be consistent and consonant with an objective approach to the solution of the question on appeal. With such continuing convictions, we cannot violate our oaths of office, nor can we accept jurisdiction of the cause once transferred to the Supreme Court.

When this Court finally has overruled a petition for rehearing in a given case, this Court loses jurisdiction. The decision in a given cause is final until and unless the Supreme Court, on petition, transfers such cause to its jurisdiction under the provisions of the statute above cited and quoted, in which event, jurisdiction reposes finally and exclusively in that court.

My stated position is supported by a number of cases, among which are *Chesapeake & Ohio Railway Company* v. *Burk* (1961), 241 Ind. 683, 172 N. E. 2d 670, 175 N. E. 2d 137; and *J. I. Case Company* v. *Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519.

In the *Burk* case, at page 691, point 6, our Supreme Court stated:

"*. . . Having accepted transfer of the case this court is obliged to consider the case as if it were originally presented to this court on appeal. . . .*" (Emphasis supplied.)

In the *Sandefur* case, the Supreme Court found that this Court had no right to decide the case upon the technical ground that the administratrix could not be substituted as a party plaintiff and that this Court thereby *"erred and we* (the Supreme Court) *must therefore grant transfer in this case."* The Supreme Court then took up the merits of the case and rendered a decision and opinion therein in accordance with its own determination. As in the *Burk* case, *supra,* it, the Supreme Court, was *"obliged to consider the case as if it were originally presented . . . on appeal."*

With lack of jurisdiction this Court, in my firm opinion, should not consider this matter further.

Faulconer, J., concurs.

NOTE.—Reported in 218 N. E. 2d 712.