**GALLANT INSURANCE COMPANY,**
**Appellant–Garnishee Defendant,**

v.

**Stephanie WILKERSON,**
**Appellee–Plaintiff,**

**and**

**Nathaniel Burton, Jr., Appellee–**
**Defendant.**

No. 02A03–9903–CV–125.

Court of Appeals of Indiana.

Dec. 20, 1999.

Thomas E. Rosta, Kopka Landau & Pinkus, Crown Point, Indiana, Attorney for Appellant.

Timothy E. Stucky, Blume Connelly Jordan & Stucky, Fort Wayne, Indiana, Attorney for Appellee Stephanie Wilkerson.

## OPINION

BROOK, Judge

### Case Summary

Appellant-garnishee defendant Gallant Insurance Company ("Gallant") appeals from the trial court's judgment ruling that it waived and is now estopped from asserting the defense of non-cooperation in proceedings supplemental and ordering the payment of insurance proceeds in satisfaction of the judgment against its insured, Nathaniel Burton, Jr. ("Burton").

We affirm.

### Issues

The following issue is dispositive of our review: whether Gallant waived the defense of non-cooperation and is now estopped from asserting the same in proceedings supplemental.[1]

### Facts and Procedural History[2]

On the afternoon of March 25, 1995, Burton was driving in Fort Wayne, Indiana, when he disregarded a stop sign and collided with a vehicle driven by Stephanie Wilkerson ("Wilkerson"). As a result of the injuries she sustained in the accident, Wilkerson retained an attorney who proffered a settlement demand of $25,000: the limits of Burton's insurance policy with Gallant. After efforts to settle her claim failed, Wilkerson filed a complaint against Burton alleging negligence and claiming personal injuries and loss of income on March 21, 1996. Wilkerson forwarded a courtesy copy of the complaint to the insurance adjuster who had been negotiating the claim for Gallant.

In response to Wilkerson's complaint, Gallant retained attorney Kenneth M. Wilk ("Wilk") to file an appearance and answer on Burton's behalf. Wilk took Wilkerson's deposition in February 1997 and communicated a settlement offer of $4,000 in August 1997. Gallant also hired an independent medical expert to evaluate Wilkerson's injuries, who concurred with the opinions of Wilkerson's own health care providers. Throughout settlement negotiations and trial preparation, Gallant contacted Burton only twice.

A jury trial was held on April 15, 1998. At that time, Burton was imprisoned at the Indiana Department of Correction ("DOC"); however, Gallant had not sought the assistance of the trial court to secure

---

1. Because Gallant's waiver of the non-cooperation defense is dispositive of this appeal, we do not reach the issues raised by Gallant with respect to any prejudice resulting from Burton's alleged non-cooperation and the trial court's denial of Gallant's request for a jury trial on the proceedings supplemental.

2. Oral argument in this case was heard at Valparaiso University School of Law on November 17, 1999. We extend our appreciation to the parties for the quality of their advocacy, as well as to the students, faculty, and administration of the law school for their interest and hospitality.

his attendance at trial and proceeded with its defense of Burton in his absence. Following the presentation of her case-in-chief, Wilkerson moved for a directed verdict on the issue of Burton's liability, which the trial court granted. Thereafter, the issue of damages was submitted to the jury, who returned a verdict in favor of Wilkerson for $57,500.

On September 24, 1998, Burton and Wilkerson entered into an agreement whereby Burton assigned all rights and claims against Gallant to Wilkerson, and Wilkerson agreed not to seek enforcement of the $57,500 judgment against Burton. On September 25, 1998, Wilkerson filed a motion to enforce the judgment by proceedings supplemental, naming Gallant as garnishee defendant and asserting in the alternative that she was entitled to the $25,000 policy limits of its insured. Gallant filed its answer on November 6, 1998, alleging as a defense that Burton had violated the policy's cooperation clause by failing to appear at trial. Gallant also requested a jury trial on the proceedings supplemental.

The trial court issued a memorandum decision on December 8, 1998, ruling that Gallant had waived the defense of non-cooperation and was estopped from asserting it in proceedings supplemental. The trial court thus denied Gallant's request for a jury trial and entered a garnishment order for $26,393.28—the maximum policy amount plus costs and interest. Gallant now appeals.

### Discussion and Decision

■ Gallant argues that the trial court erred when it determined Gallant had waived the defense of non-cooperation and was therefore estopped from raising it in proceedings supplemental. Initially, we note that the trial court's memorandum decision ordering the payment of insurance proceeds does not constitute special findings of fact and conclusions of law under Ind. Trial Rule 52. *See Smithers v. Mettert,* 513 N.E.2d 660, 662 (Ind.Ct.App. 1987), *trans. denied.* Accordingly, Gallant appeals from a general judgment that may not be disturbed unless the record fails to support any theory justifying the trial court's decision. *Id.* We will affirm the trial court's judgment on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Hermitage Ins. Co. v. Salts,* 698 N.E.2d 856, 858 (Ind.Ct.App.1998).

■ A cooperation clause such as the one at issue here applies to the conduct of the insured in proceedings subsequent to the notice of loss, claim, or suit but prior to a determination of an insurer's liability. 8 Appleman, INSURANCE LAW & PRACTICE § 4771, at 211–12 (1981). The purpose of cooperation clauses is to protect insurers by preventing collusion between the insureds and the injured parties. *Id.* at 213. Along with this protection, however, come certain duties, and "[w]hen an insurer attempts to show a breach of the cooperation clause by its insured, it is incumbent upon it to show in what manner the insurer strove to achieve compliance." *Newport v. MFA Ins. Co.,* 448 N.E.2d 1223, 1229 (Ind. Ct.App.1983). In other words, the insurer must demonstrate that it exercised good faith and diligence in securing the cooperation of its insured before asserting the defense of non-cooperation. *Id.* As explained by the Fourth Circuit Court of Appeals,

> The problem of non-cooperation has a dual aspect: not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished policy holder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence.... It would greatly weaken the practical usefulness of policies designed to afford public protection, if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him.

*Id.* (quoting *Pennsylvania Threshermen & Farmer's Mut. Casualty Ins. Co. v. Owens,* 238 F.2d 549, 550–51 (4th Cir.1956)).

When an insurer questions whether an injured party's claim falls within the scope of policy coverage or raises a defense that its insured has breached a policy condition, the insurer essentially has two options: (1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire independent counsel and defend its insured under a reservation of rights. *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 902 (Ind.Ct.App.1992), *trans. denied*; *State Farm Mut. Auto. Ins. Co. v. Glasgow,* 478 N.E.2d 918, 923 (Ind.Ct.App. 1985). In contrast, an insurer who believes it has no duty to defend and thus refuses to defend its insured "does so at its peril." *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1105 (Ind.Ct.App.1980). Indeed, we have acknowledged the sound public policy which dictates that:

> [a]n insurer, having knowledge its insured has been sued, may not close its eyes to the underlying litigation, force the insured to face the risk of that litigation without the benefit of knowing whether the insurer intends to defend or to deny coverage, and then raise policy defenses for the first time after judgment has been entered against the insured.

*Metzler,* 586 N.E.2d at 902. Likewise, we have held that sound public policy requires the converse to be true, that is, "when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge of facts which would have permitted it to deny coverage, it may be estopped from

subsequently raising the defense of noncoverage." *Salts,* 698 N.E.2d at 859.

It is well settled that contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions.[3] *Motorists Mut. Ins. Co. v. Johnson,* 139 Ind.App. 622, 632, 218 N.E.2d 712, 718 (1966); *see also* 7A Am.Jur.2d *Automobile Insurance* § 402, at 189 (1997). "[T]he doctrines of 'waiver' and 'estoppel' extend to practically every ground upon which an insurer may deny liability." *Johnson,* 139 Ind.App. at 632, 218 N.E.2d at 718 (*quoting Travelers Ins. Co. v. Eviston,* 110 Ind. App. 143, 154, 37 N.E.2d 310, 314 (1941), *modified on other grounds by W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417 (1945)). For instance, the conduct of an insurer inconsistent with an intention to rely on the requirements of the policy that leads the insured to believe that those requirements will not be insisted upon is sufficient to constitute waiver. *Id.,* 139 Ind.App. at 633, 218 N.E.2d at 718. As it relates to the instant case,

> [w]aiver of the cooperation clause has . . . been implied from the conduct of the insurer, with knowledge of the noncooperation, in continuing to act for the insured before the trial of the suit brought against him or her, or in defending the insured at trial, or in appealing from a judgment adverse to the insured. But since it is an essential element of an effective waiver that the party against whom the waiver is asserted must have knowledge of all the material facts affecting the right and the existence of the right to be waived, there can be no implied waiver by the insurer of a breach of the cooperation clause by the insured if the insurer, at the time of the

---

**3.** We note that there is a technical distinction between the terms "waiver" and "estoppel." Waiver is the intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it. *Corrigan v. Al–Trim Corp.,* 700 N.E.2d 481, 484 (Ind.Ct.App.1998), *trans. denied.* The elements of estoppel are the misleading of a party entitled to rely on the acts

or statements in question and a consequent change of position to that party's detriment. *Tate v. Secura Ins.,* 587 N.E.2d 665, 671 (Ind. 1992). In insurance cases, the distinction between waiver and estoppel is difficult to preserve, and courts have found it unnecessary or inadvisable to make such a distinction, often using the terms interchangeably. *Id.*

alleged waiver, was not in possession of knowledge of the material facts concerning that breach.

7A AM.JUR.2D, *supra*, at 190–91 (citations omitted).

Here, the undisputed evidence establishes that Gallant had "notice of and the opportunity to control" the proceedings in the underlying tort action. *See Metzler*, 586 N.E.2d at 900 ("The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and the opportunity to control the proceedings."). Specifically, it had full knowledge that Burton was in the custody of the DOC at the time of trial. Under these unique circumstances, it was impossible for Burton *not* to violate Gallant's cooperation clause based solely on his non-attendance at trial, because it was both physically and legally impossible for him to appear in court without the issuance of a writ or subpoena.[4] Gallant had the opportunity to secure Burton's presence at trial, and having assumed Burton's defense in his absence, it was incumbent upon Gallant to do so. *See Newport*, 448 N.E.2d at 1229 (in-

surer must exercise diligence in securing cooperation of insured). However, we can discern no evidence from the record, nor does Gallant present us with any, to support even an inference that it took the affirmative steps necessary to procure Burton's attendance. *See Smithers*, 513 N.E.2d at 663; *Newport*, 448 N.E.2d at 1229. Indeed, Burton testified at the proceedings supplemental that he did not wilfully refuse to cooperate with Gallant and further, that he was contacted by the insurance company only twice prior to trial.[5]

■■■ The general rule adopted by the courts of several other states has been that:

> an automobile liability insurer which learns before the trial of an action against its insured that the insured has breached the cooperation clause of the policy, and nevertheless defends him at the trial, thereby waives or is estopped to assert the insured's noncooperation, in a subsequent action to recover on the policy. This rule has been applied in a number of cases in which the insured failed to appear at the trial of the original action brought against him or her, and where the insurer conducted the

4. *See* Ind. Trial Rule 45(E), which reads, "At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of court of the county in which the action is pending when requested.... A subpoena may be served at any place within the state[.]" *Cf. also* IND.CODE § 35–37–5–3, which governs the compulsory attendance of imprisoned or institutionalized witnesses in criminal proceedings and outlines the mechanisms available to insure the safe transportation and keeping of such witnesses. *But see Hill v. Duckworth*, 679 N.E.2d 938, 939 (Ind. Ct.App.1997) (trial court cannot secure attendance of incarcerated plaintiff at civil action unrelated to case resulting in incarceration).

Nevertheless, we point out that Gallant had several options other than requesting a transport order transferring Burton from the DOC to court on the day of trial, including: (1) deposing Burton and submitting his deposition into evidence pursuant to Ind. T.R. 32(A)(3)(c); (2) conducting the trial by telephonic conference; or (3) postponing the trial

until Burton's release from incarceration. *See id.* at fn. 1. Obviously, had Gallant requested a transport order, a continuance, or any of the other foregoing possibilities, and had the trial court denied that request within its discretion, Burton's nonattendance may have been an issue. However, this is clearly not the case, as the evidence remains that Gallant did nothing to procure Burton's attendance or participation in lieu of a personal appearance. Indeed, we find it "curious," as did the trial court, "that the Plaintiff was able to obtain the Defendant's appearance for hearing on Proceedings Supplemental *with the Court's assistance*, yet the file in this cause is void of any request for assistance by the Garnishee Defendant in securing· the Defendant's appearance at trial." (Emphasis added).

5. The record does not contain a transcript of either the trial or the proceedings supplemental. At oral argument, appellate counsel advised the Court that none of the hearings surrounding the proceedings supplemental was recorded by the trial court.

defense of the insured in his or her absence[.]

7A AM.JUR.2D, *supra*, § 403, at 191 (citations omitted); *see also* Romualdo P. Eclavea, Annotation, *Liability Insurance: Insured's Failure to Attend Trial or to Testify as Breach of Cooperation Clause*, 9 A.L.R.4th 218, § 7, at 300–04 (1981) (waiver or estoppel of non-cooperation defense). We believe this rule to be an equitable one that also comports with the underlying purpose of proceedings supplemental. The filing of a motion for proceedings supplemental "speaks only to *how* the claim is to be satisfied, whereas the complaint in the original action speaks to *whether* the claim should be satisfied." *Salts*, 698 N.E.2d at 859 (quoting *Citizens National Bank v. Harvey*, 167 Ind.App. 582, 590–91, 339 N.E.2d 604, 609 (1976)). Proceedings supplemental are merely a continuation of the underlying claim initiated under the same cause number for purposes of enforcing a judgment. *Id.* at 858. To allow an insurer to defend its insured without a reservation of rights and thereafter raise a policy defense would subvert the very function for which proceedings supplemental were created. Clearly, proceedings supplemental "are not appropriate vehicles for creating, enlarging or reducing liability[.]" 30 AM. JUR.2D *Executions and Enforcement of Judgments* § 708 (1994).

■ In conclusion, we turn to the sound reasoning expressed by our colleagues on the Illinois Appellate Court:

An insurer may not raise a policy defense when it has defended and lost the underlying claim without a reservation of rights. It would be unfair to the insured to allow the insurer to defend the underlying claim while at the same time it is formulating policy defenses to deny coverage. It would also waste the time of the courts and the litigants to go through a trial expected to be dispositive only then to discover the insurer is claiming a second bite at the apple in the form of a policy defense.

*Western States Ins. Co. v. Weller*, 299 Ill. App.3d 317, 233 Ill.Dec. 692, 701 N.E.2d 542, 545 (1998) (citations omitted), *appeal denied*; *see also* Debra E. Wax, Annotation, *Liability Insurer's Waiver of Right, or Estoppel, to Set Up Breach of Co-operation Clause*, 30 A.L.R.4th 620, § 12, at 673–79 (1984) (insured's failure to appeal at trial). Similarly, Gallant seeks to take a second bite at the proverbial apple at the expense of Wilkerson, who expended considerable time and effort to litigate her claim before a jury of her peers. This we cannot condone. Gallant had a full and fair opportunity to raise Burton's alleged non-cooperation in the underlying tort action and could have protected its interests either by defending Burton under a reservation of rights or by filing a declaratory judgment action on the issue of his cooperation. *See Progressive Casualty Ins. Co. v. Morris*, 603 N.E.2d 1380, 1383 (Ind.Ct. App.1992); *Metzler*, 586 N.E.2d at 902. Gallant did neither.

■ Accordingly, by assuming Burton's defense in his absence, while having full knowledge of his incarceration and of the necessity for a writ or subpoena to secure his attendance at trial, Gallant waived the right to thereafter raise the defense of non-cooperation based solely on Burton's failure to appear and is now estopped from asserting the same in proceedings supplemental.[6] To hold otherwise would require this Court to penalize an injured party for the insurer's decision to proceed to trial without its insured and then reward the insurer for its belated

---

**6.** We note that had there been any indicia of non-cooperation other than Burton's failure to attend the trial in this case, we may have reached a different result. However, Gallant raised only Burton's failure to appear as the sole basis of their claim of non-cooperation. The absence of any facts supporting an inference of non-cooperation on grounds other than Burton's failure to appear at trial, together with the evidence that Gallant made no effort to secure Burton's presence despite knowledge of his whereabouts, leads us to the conclusion that we reach today.

efforts to avoid satisfaction of a just and fair judgment entered as a result of that adjudication. We will not allow an insurer to "sit idly by and wait until an adverse judgment is entered before raising a dispositive defense," *Salts*, 698 N.E.2d at 859, nor will we permit conduct contrary to the principles of equity, efficiency, and the finality of judgments.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

KIRSCH and DARDEN, JJ., concur.