GALLANT INSURANCE COMPANY, Appellant–Garnishee–Defendant,

v.

Jeffrey OSWALT, Appellee–Plaintiff,

and

Donald Chadwick, Appellee–Defendant.

No. 43A04–0104–CV–148.

Court of Appeals of Indiana.

Feb. 12, 2002.

Michael E. O'Neill, Scott B. Cockrum, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellant.

Michael L. Valentine, William S. Fawley, Valentine & Miner, Warsaw, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

This case arises from the trial court's grant of summary judgment against Gallant Insurance Company in a proceedings supplemental action brought by Jeffrey Oswalt. We affirm in part and reverse in part.

### Issues

Gallant raises three issues for our review, which can be consolidated and restated as the following two issues:

I.  whether the trial court erred in granting summary judgment in spite of Gallant's showing that it had defended Chadwick under a reservation of rights; and

II. whether the trial court erred by not granting Gallant's cross-motion for summary judgment in its declaratory judgment action.

### Facts[1]

Jeffrey Oswalt sued Donald Chadwick on December 13, 1996, claiming personal injuries resulting from an automobile accident that had occurred on June 22, 1996. On April 7, 1997, Gallant notified Chadwick in writing that because he had failed to comply with the terms and conditions of his insurance policy, it would be proceeding in his defense under a reservation of rights. Due to difficulty in communicating with Chadwick, Gallant performed a skip-trace on August 20, 1998, to locate him. When the skip-trace revealed a new address, Gallant advised him a second time, on October 8, 1998, that it was defending Oswalt's claim against him under a reservation of rights due to his failure to cooperate in the defense. On October 28, 1998, Chadwick assisted the counsel Gallant had retained, Kenneth Wilk, in completing Oswalt's "First Set of Interrogatories."

Despite counsel's admonishments to Chadwick that it was necessary to be present for trial, he failed to appear. On October 13, 1999, at the conclusion of a two-day jury trial, Oswalt obtained a judgment of approximately $56,000 against Chadwick. On January 26, 2000, Oswalt initiated proceedings supplemental to execution, naming Gallant Insurance Company as garnishee-defendant. In its answer filed February 18, 2000, Gallant asserted Chadwick had "failed to appear for trial or otherwise cooperate" with Gallant in his defense, in so doing had breached the insurance policy issued him by Gallant, and thus was not entitled to coverage. Appendix p. 40.

Gallant next filed a motion for declaratory judgment on March 15, 2000, seeking the trial court's determination that it did not owe Chadwick coverage under the policy due to his failure to cooperate in defending Oswalt's suit. On January 10, 2001, Oswalt moved for summary judgment, filing a memorandum in support thereof and designating inter alia the affidavits of Chadwick and Oswalt's counsel, Michael Valentine. In relevant part, Chadwick averred that: he was insured by Gallant at the time of the accident; he had

---

1. We heard oral argument in Indianapolis on October 2, 2001. We appreciate the parties' enlightening and informative presentations.

been "accessible by telephone" and had participated in "three or four phone discussions" with Kenneth Wilk, the first attorney Gallant retained to represent him; and he had "two conversations" with the attorney subsequently retained by Gallant to replace Wilk. Appendix pp. 68–69. He averred that he told the second attorney that he "understood the importance of attendance at the trial and ... wanted to be there," and had asked him "to try to have the date of the trial moved" so he could attend. Appendix p. 69. However, his affidavit also states that he had been informed that the trial date could not be changed.

The thrust of Valentine's affidavit was that Chadwick's counsel "never mentioned the defense of 'failure to cooperate'" to him "before, during or after the trial in this matter." Appendix p. 72. He also averred that Chadwick's counsel had not tried to change the trial date by informing him or the court of Chadwick's inability to attend, and that had he "known that [Chadwick's counsel] would attempt to assert the 'failure to cooperate' defense after the trial," he "would have attempted to use the Court's subpoena power to secure Mr. Chadwick's attendance at the trial in an effort to conserve judicial resources by avoiding this post-trial litigation." Appendix p. 73.

The trial court granted Oswalt's summary judgment motion on March 7, 2001, finding in part "[t]hat neither at the trial of this action, nor prior thereto, was any claim made or presented to the Court that [Chadwick] failed to cooperate or in any way breached the cooperation clause of the underlying policy in this case." Appendix p. 10. Gallant appeals.

### Analysis

#### Summary Judgment in Proceedings Supplemental

When reviewing a grant or denial of summary judgment, our well-settled stan-

dard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Hibler v. Conseco, Inc.,* 744 N.E.2d 1012, 1017 (Ind.Ct.App.2001) (citing Ind.Trial Rule 56(C)). Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* A trial court's ruling on a motion for summary judgment reaches this court clothed with a presumption of correctness. *Id.* at 1018. When reviewing the trial court's ruling we will affirm on any theory supported by the material properly designated to the trial court. *Id.*

A trial court is vested with broad discretion in conducting proceedings supplemental. *Hermitage Ins. Co. v. Salts,* 698 N.E.2d 856, 858 (Ind.Ct.App.1998). Proceedings supplemental, as provided for in Indiana Trial Rule 69, are summary in nature because the claim has already been determined to be a justly owed debt reduced to judgment. *Id.* As this court recognized in *Gallant Ins. Co. v. Wilkerson:*

> The filing of a motion for proceedings supplemental "speaks only to how the claim is to be satisfied, whereas the complaint in the original action speaks to whether the claim should be satisfied." Proceedings supplemental are merely a continuation of the underlying claim initiated under the same cause number for purposes of enforcing a judgment.

720 N.E.2d 1223, 1229 (Ind.Ct.App.1999) (citations omitted).

#### I. Reservation of Rights/Non-cooperation as a Defense in Proceedings Supplemental

In addition to its discussion of the nature of proceedings supplemental, *Wilkerson* also stated the following proposition:

When an insurer questions whether an injured party's claim falls within the scope of policy coverage or raises a defense that its insured has breached a policy condition, the insurer essentially has two options: (1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire independent counsel and defend its insured under a reservation of rights.

*Id.* at 1227. In *Wilkerson*, we reviewed and affirmed the trial court's determination that Gallant had waived the defense of non-cooperation and was therefore estopped from raising it during proceedings supplemental. 720 N.E.2d 1223, 1227–28 (Ind.Ct.App.1999). Those facts differed from this case as follows: at the time of trial the insured, Burton, was imprisoned at the Indiana Department of Correction and Gallant did not seek the assistance of the trial court to secure his attendance at trial. Furthermore, Gallant contacted Burton only twice prior to the trial. We noted:

> "[a]n insurer may not raise a policy defense when it has defended and lost the underlying claim without reservation of rights." … Gallant had a full and fair opportunity to raise Burton's alleged non-cooperation in the underlying tort action and *could have protected its interests either by defending Burton under a reservation of rights or by filing a declaratory judgment action on the issue of his cooperation.*

*Id.* at 1229, (quoting *Western States Ins. Co. v. Weller*, 299 Ill.App.3d 317, 233 Ill. Dec. 692, 701 N.E.2d 542, 545 (1998)) (emphasis added). Here, Gallant (1) performed a skip-trace to locate Chadwick; (2) attempted to contact Chadwick numerous times; (3) sent at least two separate letters indicating its reservation of rights; and (4) stressed to Chadwick the impor-

tance of his appearance at the trial and the potential consequences—including loss of coverage—if he did not appear. Clearly, the facts of *Wilkerson* are not on all fours with the facts of the instant case.

In *Illinois Founders Ins. Co. v. Horace Mann*, we reiterated the proposition that proceedings supplemental cannot be used as a collateral attack on the underlying judgment. 738 N.E.2d 705, 708 (Ind. Ct.App.2000) (citing *Koors v. Great Southwest Fire Ins. Co.*, 538 N.E.2d 259, 260 (Ind.Ct.App.1989)). In proceedings supplemental to recover from a liability insurer, the judgment creditor bears the burden of showing a judgment, the insurance policy, and facial coverage under the policy. *Gallant Ins. Co. v. Allstate Ins. Co.*, 723 N.E.2d 452, 454 (Ind.Ct.App.2000) (citing *Hermitage*, 698 N.E.2d at 859). In *Horace Mann*, we determined that a garnishee-defendant insurance company could not launch a collateral attack on the plaintiff's judgment by way of asserting the insured's non-cooperation *because it had not so claimed at trial.* 738 N.E.2d 705, 707–08 (Ind.Ct.App.2000). We cited *Wilkerson*, where we had noted the general rule that

> an automobile liability insurer which learns before the trial of an action against its insured that the insured has breached the cooperation clause of the policy, and nevertheless defends him at trial, thereby waives or is estopped to assert the insured's noncooperation in a subsequent action to recover on the policy. This rule has been applied in a number of cases in which the insured failed to appear at the trial of the original action brought against him or her, and where the insurer conducted the defense of the insured in his or her absence.

*Id.* at 708 (citing *Wilkerson*, 720 N.E.2d at 1229). We reasoned that the holding "comports with the underlying [equitable]

purpose of proceedings supplemental." *Id.*

■ *Horace Mann* is also factually distinguishable from this case. In that case, we could "discern no evidence from the Record, nor does [insurer] provide us with any, to support even an inference that it took affirmative steps necessary to locate [the insured] and procure his attendance [at trial]." To the contrary, here, the record on appeal demonstrates that both counsel and Gallant attempted to locate Chadwick and to procure his attendance at trial. As we noted in *Horace Mann,* "when an insurer is prejudiced by the insured's noncompliance with the policy's provisions, the insurer is relieved of its liability under the policy." 738 N.E.2d at 707. Gallant was arguably prejudiced by Chadwick's noncompliance and failure to cooperate; whether the prejudice is sufficient to foreclose coverage under the terms of the insurance contract between Gallant and Chadwick can and should be determined by the declaratory judgment action, and is at least a question of fact precluding summary judgment in Oswalt's favor at this juncture. Thus, we hold that because Gallant proceeded under a reservation of rights, it was entitled to raise the defense of Chadwick's non-cooperation, and that as such, the trial court erred in granting summary judgment to Oswalt.

■ The dissent correctly notes that there was "a duty on the part of Gallant to defend." Op. at 1266. Indeed, it is axiomatic that "an insurer's duty to defend is broader than its coverage for liability or its duty to indemnify." *Indiana Farmers Mut. Ins. Co. v. Ellison,* 679 N.E.2d 1378, 1381–82 (Ind.Ct.App.1997), *trans. denied.* "The duty to defend is determined from the allegations of the complaint and from the facts known or ascertainable by the insurer *after an investigation has been made." Id.* at 1382 (emphasis added). If the pleadings fail to disclose a claim within the coverage limits, or one that is clearly excluded under the policy, and investigation reveals that the claim is outside the coverage of the policy, no defense is required. *Id.* As a matter of law, however, the insurer has a duty to conduct a reasonable investigation into the facts underlying the complaint before it may refuse to defend the complaint. *Monroe Guar. Ins. Co. v. Monroe,* 677 N.E.2d 620, 624 (Ind. Ct.App.1997), *trans. dismissed. See also Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 902 (Ind.Ct.App.1992) (stating, "[An insurer] can refuse to defend *or* clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril ....") (emphasis added).

■ Based on our prior decisions such as *Wilkerson* and *Horace Mann,* insurers may fulfill that broad duty while at the same time reserving their right to disavow coverage after investigation. The dissent even acknowledges that *"until Chadwick failed to appear* and assist in the defense, ... Gallant was under a prospective obligation to pay any judgment up to the $25,000 policy limits." Op. at 1266 (emphasis added). However, Chadwick *did* fail to appear and assist in the defense, and at that point the right to dispute coverage—the right Gallant had reserved as explicitly as possible—arose.

Furthermore, in *Horace Mann,* unlike in the instant case, the insurer never asserted it had made a proper reservation of rights. Here, it is significant that Gallant did proceed under a reservation of rights, one of the options dictated by *Wilkerson.* The problem addressed by *Horace Mann* is a different one. Gallant's asserting the defense of non-cooperation, once it had reserved its right to do so as between itself and Chadwick, is not necessarily the sort of "collateral attack" contemplated by

*Horace Mann.* We posit that as long as an insurer asserts a liability defense as soon as the insurer becomes aware of the applicability of the defense—as did Gallant here, by proceeding under a reservation of rights *and* by filing a declaratory judgment action—then raising that *same* defense at the proceedings supplemental stage is not tantamount to a "collateral attack."

In *Motorists Mut. Ins. Co. v. Johnson,* cited by the dissent, we stated that "[w]ords or conduct of an insurer inconsistent with an intention to rely on the requirements of the policy, if they lead the insured into belief that those requirements will not be insisted upon, suffice to constitute waiver." 139 Ind.App. 622, 633, 218 N.E.2d 712, 718 (1966). We also noted that the concept of "cooperation" with an insurer in litigation "implies not an abstract conformity to ideal conduct but a pragmatic question to determined in each case in the light of the particular facts and circumstances." 139 Ind.App. at 631, 218 N.E.2d at 717. The *Johnson* court further stated, "A technical or inconsequential lack of cooperation has often been held insufficient to void the policy and the lack of cooperation to be sufficient must be in some substantial and material respect. Non-cooperation must be material. Prejudice must be shown by insurer." 139 Ind. App. at 628, 218 N.E.2d at 715 (citations omitted).

Similarly, in *Miller v. Dilts,* also cited by the dissent, our supreme court considered three cases specifically involving the insureds' failures to notify their insurance carriers of the accidents arguably invoking coverage, and stated the common issue as "whether there is a difference between a duty to give prompt notice and a duty to cooperate in an automobile insurance policy." 463 N.E.2d 257, 260 (Ind.1984). The court answered the question in the nega-

tive and held that "each violation requires a showing of prejudice to the insurer in order to avoid coverage under the policy." *Id.*

Citing these cases, the dissent questions whether Gallant proceeded under a valid reservation of rights and evaluates Gallant's attempts at such a reservation, finding them inadequate. However, we believe it is inconsistent to say that insurers must proceed under a reservation of rights while also holding that a letter that says, "this notice is given to you to *reserve the rights* of the Company" does not effect that end. Appendix p. 116 (emphasis added).

We conclude that the language the dissent cites from the April 7, 1997, letter from Gallant to Chadwick must be considered in the context of the entire letter. Specifically, the first sentence of the letter reads, "You are hereby notified that Gallant Insurance Company takes position [sic] that you have breached your contract of insurance." It also states that Chadwick *had* breached the contract by not forwarding the summons and complaint. The letter does not end there, however, but further states that, "Gallant Insurance *does not waive any of the terms or conditions of your insurance policy and it does not waive any rights of the Company* [,]" and concludes:

> This notice is given to you *to reserve the rights of the Company and to permit the Company to investigate and defend this matter without the Company assuming any liability under the policy. Be advised that you have the right to retain additional counsel on your behalf and at your own expense.*

Appendix p. 116 (emphases added).

We take no issue with the notion, advanced by the dissent, that prejudice resulting from material non-cooperation must be shown by the insurer *to avoid*

*coverage.* However, we submit that the dissent strays from the mark in stating that such prejudice must be irrefutably proven before the insurer can assert or attempt to assert a reservation of rights. Certainly, the resolution of a subsequent declaratory judgment action turns on whether the insurer can demonstrate prejudice resulting from material non-cooperation. But because the duty to defend is broader than the duty to indemnify, the insurer must *first* reserve the right to deny coverage later, via, for example, a declaratory judgment action, while at the same time it appears and defends the insured. Otherwise, it risks a bad-faith action for breach of the duty to defend. Such is the purpose of a reservation of rights: to allow the insurer to fulfill the broad duty to defend while at the same time investigating and pursuing the narrower issue of whether indemnification will result. We cannot decide the question whether the breach was material and whether the insurer was prejudiced thereby where, as here, the context is a summary judgment occurring only after the insurer has fulfilled its duty to defend. We *do* have to decide whether there is a question of fact about the validity of the reservation, and decline to hold that here, the reservation was not valid because the insurer had indicia that the insured might not cooperate well before he failed to appear for trial, and took all the steps it knew to take in order to effect a valid reservation of rights. As we noted in *Wilkerson,* "had there been any indicia of non-cooperation other than Burton's failure to attend the trial in this case, we may have reached a different result." 720 N.E.2d at 1229, n. 6. Here, there were indicia of non-cooperation, which properly led to a reservation of rights.

Additionally, in *Horace Mann* we acknowledged that "a liability insurer may stay proceedings supplemental while pursuing a separate declaratory action to determine the insurer's liability under the policy." 738 N.E.2d at 708 (citing *Wilkerson,* 720 N.E.2d at 1227). Here, the proceedings supplemental were initiated on January 26, 2000. In its answer filed February 18, 2000, Gallant availed itself of its first true opportunity to claim Chadwick's non-cooperation (i.e., his failure to appear at the trial in late 1999) as a defense to liability.[2] Then, almost ten months before Oswalt filed the summary judgment action from which Gallant now appeals, Gallant initiated its declaratory judgment action, on March 15, 2000. It would have been appropriate for the trial court to stay the proceedings supplemental during the pendency of the declaratory judgment action.

We further wish to address a practical aspect we did not speak to in *Horace Mann, Wilkerson, Johnson,* or *Miller:* namely, the ethical prohibition upon insurance counsel to "volunteer" the fact of a client's non-cooperation to the trial court or to the plaintiff. In his memorandum in support of summary judgment, Oswalt stated, "shortly before the original trial date in this cause Gallant replaced Mr. Wilk with the law office of Conover & Foos. Duke [Eskew] became counsel for Chadwick." Appendix p. 60. "The 'failure to cooperate' defense was raised by Gallant for the first time on March 15, 2000, more than five months after the jury trial." *Id.* It seems to us inappropriate to place the onus of disclosure of the insured's pu-

---

2. The dissent criticizes our characterization of this as Gallant's "first true opportunity" to claim non-cooperation. To characterize it as such is not, in our view, inconsistent with our conclusion that the earlier communications from Gallant to Chadwick were valid reservations of Gallant's right to disavow coverage. It was Gallant's "first true opportunity" to claim *anything* in the same forum as the underlying suit, to which it was not a party.

tative non-cooperation upon counsel obtained by the insurance company to represent the insured. Such a rule would likely run afoul of Professional Conduct Rule 1.6, which provides in relevant part, "(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...."

■ In *Cincinnati Ins. Co. v. Wills*, our supreme court found "no inherent conflict" in the practice of defense of claims litigation by insurance company house or captive counsel. 717 N.E.2d 151, 152 (Ind. 1999). In that case, the defendant-insured, like Chadwick, was advised that although insurance counsel was employed and paid by the insurer, counsel's "ethical obligations" were owed to the defendant-insured alone. *Id.* If a plaintiff such as Oswalt wishes to inquire during discovery as to whether an insured's non-cooperation has been or threatens to become an issue as litigation continues—and/or to inquire whether the insurance carrier is proceeding under a reservation of rights—it may do so. At that point, the insured's counsel—who may or may not be retained by the insurance company, but in either case may or may not be aware of the extent to which the insured is "cooperating" under the terms of the insurance contract—can inquire of the insurance company and give the appropriate response. The ethical difference is between volunteering the information and responding truthfully when asked. We find nothing in the record on appeal to indicate here that Oswalt asked the question. We therefore depart from *Horace Mann* to the extent that it stands for the proposition that it is incumbent upon an insured's defense counsel to *volunteer* information potentially adverse to his client. Put another way, counsel should not be called upon suddenly to "change hats" and speak in and for the insurer's interests when his role has previously been and should remain that of a zealous advocate for his client, the insured.

The dissent offers that "the injured plaintiff is entitled to be put on notice that collection of any judgment which might be rendered in his favor has been jeopardized.... At a minimum, the injured plaintiff should be apprised if and when the insurer notifies the insured that the defense is proceeding under a reservation of rights." Op. at 1265. We agree that such a scheme would alleviate or minimize the problem of going through trial and obtaining judgment only to be faced later with the inability to collect that judgment because of a coverage dispute between the insurer and the insured. But the requirement of such a disclosure is not currently the law in Indiana.

## II. Gallant's Summary Judgment Motion

■ Gallant also argues that the trial court erred in not granting its cross-motion for summary judgment on its declaratory judgment action. In the declaratory judgment context:

The interpretation of an insurance policy is primarily a question of law for the court. The provisions of an insurance contract are subject to the same rules of interpretation and construction as are other contract terms.

In construing a written insurance contract, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of an insurance contract. A contract will be found to be ambiguous only when it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. An ambiguity is not established simply because a controver-

sy exists, and one party asserts an interpretation contrary to that asserted by the opposing party.

*American States Ins. Co. v. Adair Indus. Inc.,* 576 N.E.2d 1272, 1273–74 (Ind.Ct. App.1991).

Gallant argues that it was clearly prejudiced by Chadwick's failure to cooperate: "the possibility of finding witnesses [to support] Chadwick's version of events or identifying the drivers in front of Oswalt's vehicle was hampered because he did not provide his version of events until two years and four months after the accident, ignoring requests to fill out forms in the process." Appellant's Brief p. 20. In addition, Gallant claims prejudice due to Chadwick's failure to keep it apprised of his address changes, failure to respond to various attorney communications, and failure to appear for trial. Chadwick's affidavit, on the other hand, states in relevant part:

5. Gallant Insurance Company did not inform me about any mediation conferences or settlement negotiations.

6. I was accessible by telephone and had three or four phone discussions with Attorney Kenneth Wilk about the accident.

7. Although I did discuss this case with Attorney Kenneth Wilk, we did not discuss any defenses to Mr. Oswalt's claim against me.

8. I was accessible by telephone after my insurer changed attorneys and had two conversations with Attorney Duke Escue [sic] about the accident and upcoming trial.

9. Although I did discuss this case with Attorney Duke Escue [sic], we did not discuss any defenses to Mr. Oswalt's claim against me. . . .

Appendix pp. 158–59. Gallant urges us that this affidavit is "self-serving" and is "insufficient to create a genuine issue of material fact on this issue." Appellant's Brief p. 21. Gallant cites Chadwick's interrogatory answers, submitted on October 28, 1998, to attorney Wilk, in which he stated in part that he believed he saw the driver of Oswalt's car (his wife, Kimberly Oswalt) "getting into her purse or s[o]mething while driving." Appendix p. 156.

■ When reviewing a summary judgment ruling, we construe the pleadings and designated materials in a light most favorable to the non-movant, giving careful scrutiny to ensure that the losing party is not improperly denied its day in court. *Becker v. Four Points Inv. Corp.,* 708 N.E.2d 29, 30 (Ind.Ct.App.1999), *trans. denied.* When viewed in the light most favorable to Chadwick as non-movant in the declaratory summary judgment claim, we find this dispute over whether there existed a defense to coverage to be a genuine issue of material fact. We note that one of the grounds on which Gallant claims prejudice—the hampering of the development of a defense by Chadwick's foreclosing "the possibility of finding witnesses . . . or identifying the drivers in front of Oswalt's vehicle"—is tenuously supported at best. For instance, in the same interrogatories Gallant cites, Chadwick was asked to "[s]tate the full name and address of each person who witnesses or claimed to have witnessed the happening of the casualty complained of in this action[,]" to which Chadwick answered, "None of which I am aware." Appendix p. 139. It would seem that Gallant could have pursued other methods, such as police reports or the depositions of other drivers, to begin to develop any defense it believed existed. At the very least, however, just as we concluded that the trial court should not decide this same issue in Oswalt's favor when presented with a summary judgment motion in the proceedings supplemental, we also conclude that reasonable persons

could honestly differ as to whether Chadwick's alleged failure to cooperate so greatly prejudiced Gallant as to relieve it completely of liability.

## Conclusion

Because Gallant successfully preserved the defense of Chadwick's non-cooperation via its reservation of rights, the trial court erred in granting Oswalt summary judgment in his proceedings supplemental against Gallant as garnishee-defendant, and we reverse that summary judgment. However, because a genuine issue of material fact exists as to whether that non-cooperation so prejudiced Gallant as to relieve it completely of liability in Oswalt's cause against Chadwick, we affirm the trial court's denial of summary judgment in Gallant's declaratory judgment action.

Affirmed in part and reversed in part.

MATTINGLY–MAY, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Because I dissent from the majority's holding reversing the summary judgment in favor of Oswalt in the proceedings supplemental, I do not reach the matter of Gallant's summary judgment motion in the declaratory judgment suit. If, however, I were to join the majority with regard to the proceedings supplemental, I would likewise agree that denial of Gallant's summary judgment motion was correct.

The nature of my dissent has multiple aspects. For this reason, I deem it appropriate to make somewhat extensive reference to the various communications and occurrences between Gallant and Chadwick.

The letter of April 7, 1997, from Gallant to Chadwick advised him he had breached Condition 3 of the policy by failing to "immediately forward ... the Summons and Complaint served upon you...." Appellant's App. at 116. The letter proceeded to state that, "[i]f a judgment *was* entered against you due to your breach of *this* condition" certain adverse consequences might occur including Gallant not defending Chadwick and not paying any such judgment. *Id.* (emphasis supplied). This eventuality did not occur in that no judgment was entered as a result of the alleged breach. Therefore, the alleged breach of Condition 3 had no impact upon the preparation of a defense, nor did it otherwise prejudice the insurer. As a matter of fact, this letter advised that Gallant would "investigate ... and retain attorneys to defend you." *Id.*

The letter of April 28, 1998, from Gallant's attorney Wilk, was sent to the same address (Maple Grove Road, Marion, Ohio) and advised that Wilk had been retained by Gallant "to defend you." Appellant's App. at 117. The letter advised that it was necessary to meet with Chadwick for an interview concerning the accident. It stated that the policy required Chadwick to cooperate and that, "If you don't, you may end up losing your coverage and/or defeating my efforts to properly defend your interests." *Id.* It advised of a trial date setting for January 18–21, 1999. This letter was a warning advising of what might happen absent contact and cooperation. It demonstrates that nothing prior to that time could or would constitute such a breach as to cause no defense or no coverage.[3]

---

**3.** The majority seems to place great emphasis upon a skip-trace conducted August 20, 1998, and concludes that the additional address shown, i.e. 9462 N. St. [Road] 3, Etna Green, Indiana was a "new" address. Op. at 1256. I would note, however, that the Etna Green address is shown as of February 1997, one month earlier than the time shown for the

To the extent that the letter of October 8, 1998, from Gallant to Chadwick constituted notice that Gallant was proceeding under a reservation of rights, it references Condition 5 of the policy and says that Gallant considers that condition as having been breached. However, none of the enumerated duties under Condition 5 could have been breached as of that time, with the possible exception of the duty to secure evidence upon Gallant's request.[4] Yet, there is no indication of record that as of that time Gallant had requested Chadwick to secure evidence. Be that as it may, as of October 1998, there was still a full year before the actual trial date. Therefore, the presentation of the defense was not then jeopardized.[5]

As a matter of fact, on October 28, 1998, Chadwick did cooperate and help attorney Wilk complete interrogatories submitted by the plaintiff, Oswalt. Therefore, as of October 28, 1998, Chadwick was cooperating and no basis existed for Gallant to claim any breach of the cooperation clause sufficient to jeopardize Chadwick's defense or Gallant's liability under the policy.

The crucial letter is that of September 16, 1999, in which new defense attorney Conover advised Chadwick of the trial date for October 12, 1999, and that Chadwick's appearance was required. It also noted that failure to cooperate by "failure to attend this trial could jeopardize any insurance you may have for this incident and result in a judgment being entered against you and for which you would be personally responsible." Appellant's App. at 124. It is again a warning of what might happen *if* Chadwick failed to appear at trial. It also told Chadwick to advise "any witnesses you may have" of the trial date and told him to visit the scene of the accident and to note location and operation of any traffic control devices and all other important details, such as lanes of traffic and approximate distances. *Id.* Again, it was an instruction of something Chadwick had to do *before* trial, not that he had done something in the past to jeopardize his coverage.

It is my view that the only breach of the terms and conditions of the policy, even arguably sufficient to warrant a denial of coverage, was Chadwick's failure to appear at trial and assist in his defense.[6] Nothing which had occurred or had failed to occur prior to that time would justify a contention that settlement discussions or presentation of a defense had been compromised. Notwithstanding Gallant's letters to Chadwick containing language indicating a res-

---

Maple Grove Road address in Marion, Ohio. Furthermore, the skip-trace report shows the "current address" as Maple Grove Road, Marion, Ohio. Contrary to the conclusion reached by the majority, therefore, I must deduce that the Etna Green address was not a "new" address as of the date of the report.

4. The pertinent portion of Condition 5 reads as follows:

"Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, attend hearings and trials and assist in making settlements, securing and giving evidence, obtaining the attendance of witnesses in the conduct of any legal proceed-

ings in connection with the subject matter of this insurance." Appellant's App. at 107.

5. Under Indiana law, an insurer is not permitted to refuse to provide a defense or deny liability under the policy unless the non-cooperation of the insured has prejudiced the insurer. *Miller v. Dilts*, 463 N.E.2d 257 (Ind. 1984); *Motorists Mut. Ins. Co. v. Johnson*, 139 Ind.App. 622, 218 N.E.2d 712 (1966), *trans. denied*.

6. Not every failure to appear at trial will be prejudicial to the insurer, e.g., where the insured's presence would only lead to testimony demonstrating his, and therefore insurer's liability. 8 Appleman, INSURANCE LAW AND PRACTICE § 4773.

ervation of rights, there was from the outset, through to the date the trial began, a duty on the part of Gallant to defend and, until Chadwick failed to appear and assist in the defense, I believe Gallant was under a prospective obligation to pay any judgment up to the $25,000 policy limits. In this respect, I believe that the majority misreads the underlying rationale for this dissent. It is not that an insurer may not assert a reservation of rights without first proving prejudice. Rather, it is that there must have been an instance or instances of meaningful non-cooperation before the reservation of rights may be effectively asserted. An insurer may not seek to protect itself against liability by asserting a reservation of rights due to some prospective or fancied act of non-cooperation which has not yet occurred.

Although there was some justification, at least before October 28, 1998, for Gallant's concern that Chadwick might not fully cooperate, nothing Chadwick did or did not do prejudiced Gallant's ability or duty to defend; nor was there anything done which caused Gallant to advise Chadwick that coverage was being denied. To the contrary, all the communication to Chadwick was phrased in terms of "if" you do not cooperate, certain consequences *might* occur.

The phrasing of Gallant's communications to Chadwick and the conduct of defendant's counsel prior to the date of trial unmistakably indicate that, despite knowledge of arguable but technical non-cooperation on the part of Chadwick, Gallant was " 'continuing to act for the insured before the trial. . . .' " *Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1227 (Ind.Ct.App.

1999) (quoting 7A Am.Jur.2d *Automobile Insurance* § 402, at 190–91). Such action constitutes a waiver of any non-cooperation defense which may have existed prior to trial. *Id.*[7]

Accordingly, I question whether the majority is correct in its conclusion that here, unlike in *Illinois Founders Ins. Co. v. Horace Mann Ins. Co.*, 738 N.E.2d 705 (Ind.Ct.App.2000), Gallant proceeded under a valid reservation of rights. In this case, as contemplated by the general rule set forth in *Wilkerson*, " 'the insured failed to appear at the trial of the original action . . . and . . . the insurer conducted the defense of the insured in his or her absence.' " 720 N.E.2d at 1228–1229 (quoting 7A Am.Jur.2d *supra*, § 403, at 191).

The only relevant breach of the cooperation clause of the policy was Chadwick's failure to appear for trial. It was not until that occurrence that Gallant became aware of the arguable applicability of the non-cooperation defense.

The majority takes what appear to me to be inconsistent positions. On the one hand, it is said that Gallant became aware of the defense of non-cooperation "by proceeding under a reservation of rights." Op. at 1259. Yet, on the other hand, the majority has concluded that not until filing of its answer to the proceedings supplemental on February 18, 2000, did Gallant have "its first true opportunity to claim Chadwick's non-cooperation (i.e., his failure to appear at the trial in late 1999) as a defense to liability." Op. at 1261.

I agree with the latter stated position of the majority precisely because it was the

---

7. Clearly, and as observed by the majority here, "an insurer's duty to defend is broader than its coverage for liability. . . ." Op. at 1259. Nevertheless, this legal truism does not alter the principle drawn from *Wilkerson* and from *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856 (Ind.Ct.App.1998) (and cases cited therein), that an insurer who proceeds to defend with full knowledge of the facts may be estopped from subsequently raising the defense of non-coverage.

failure of Chadwick to appear on the trial date which triggered Gallant's non-cooperation assertion. In short, any so-called "reservation of rights" asserted in various correspondence between Gallant or the attorneys retained by Gallant and Chadwick is irrelevant to the matter before us.

I must further take issue with the majority opinion insofar as it appears to place a burden upon the plaintiff to make inquiry whether or not the insured is cooperating with his insurer. *See* Op. at 1262. The majority seems to place this duty upon the plaintiff "during discovery." *Id.* Yet, as earlier observed, the non-cooperation in question did not occur during discovery. It occurred at the commencement of the trial when Chadwick did not appear.

Furthermore, in this regard, the majority somehow transfers to the plaintiff the ability of the "insured's counsel" to inquire of the insurance company to determine cooperation or the lack thereof by the insured. The majority is concerned that counsel for the insured should not "change hats" in, on the one hand, vigorously defending the client, the insured, but then on the other hand, volunteering information potentially adverse to the client. Op. at 1262. Yet, the majority contemplates precisely that scenario in noting that if, during discovery, a plaintiff, such as Oswalt, wishes to inquire as to cooperation or non-cooperation he may do so, *and then* counsel for the insured will ask that question of the insurance company and in turn, relay the information to plaintiff's attorney. I wholly fail to understand why volunteering information and responding to an inquiry from the plaintiff with the identical information solves concerns as to "ethical obli-

gations." Op. at 1262. In my view, the majority places a wholly unrealistic and unnecessary burden upon plaintiffs. Plaintiff should not be required to contact the insurer on a daily basis to ask: "Is your insured still cooperating?"

As to pre-trial non-cooperation, it has been noted that ordinarily an insurer is not obligated to file a reservation of rights letter in the injury action. This approach is premised upon the idea that the reservation is a matter between the insurer and the insured arising out of the contract of insurance between the two. 14 LEE E. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE, § 202.44 (3d ed.1997). However, Couch also notes that some jurisdictions require the insurer to provide the injured party plaintiff with a copy of the reservation of rights letter.

In this state, at least one case, *Motorists Mut. Ins. Co. v. Johnson,* 139 Ind.App. 622, 218 N.E.2d 712 (1966), leads me to the conclusion that a plaintiff is entitled to notice of assertion by the insurer of a reservation of rights. In that case, the court noted that after receiving a judgment against the insured person, the plaintiff, in proceedings against the insurer to collect the judgment, "is in the legal shoes of the insured. If the insured has violated the policy requirements, the injured person would be precluded from recovery against the insurance company." *Johnson,* 218 N.E.2d at 715.

This proposition clearly reflects that a prospective claim by the insurer of no liability upon the policy will have an adverse effect upon the injured party plaintiff.[8] Accordingly, it stands to reason that

---

**8.** A rationale for notification to the plaintiff is found in *Kitchen v. McCullough,* 428 S.W.2d 907, 910 (Mo.Ct.App.1968), in which the plaintiff obtained a $4000 judgment in an automobile collision suit and then, as here,

initiated garnishment against the insurer, when for the first time, the insurer asserted a policy defense. Although in that case the insurer had not defended under a reservation of rights, the court observed that the plaintiff

the injured plaintiff is entitled to be put on notice that collection of any judgment which might be rendered in his favor has been jeopardized, at least to the extent of the policy limits. At a minimum, the injured plaintiff should be apprised if and when the insurer notifies the insured that the defense is proceeding under a reservation of rights.[9]

Even if there is opportunity *during discovery* for plaintiff to inquire as to cooperation or non-cooperation, I would certainly think it inappropriate to impose such a duty of inquiry after discovery has closed just on the chance that some unforeseen non-cooperation has occurred. Here, there was no non-cooperation problem during discovery. As earlier noted, Chadwick assisted in answering Oswalt's pre-trial interrogatories. Here, we need not decide whether counsel for the insured was required to raise the non-cooperation claim at or prior to trial, as was held in *Horace Mann, supra,* at least as such relates to incidents of non-cooperation occurring during investigation and discovery of plaintiff's claim.[10] In the case before us, neither of the parties nor the trial court anticipated Chadwick's failure to appear at trial. In this set of circumstances, I would submit that there was no duty for insurance counsel to advise Oswalt of the then obvious non-cooperation, nor of Oswalt to make inquiry of Gallant as to the same obvious fact.

To the extent that *Horace Mann* and *Wilkerson* require the insurance company to assert the non-cooperation defense at the first reasonable opportunity, I would apply those decisions to the case before us. Having waited from October 12, 1999, the first day of trial, until February 18, 2000, to present the issue, Gallant should now be estopped to assert that defense.

I would affirm the judgment of the trial court.

might have chosen to not go to "the expense of producing witnesses and attending the taking of depositions that might not have been necessary if garnishee had disclaimed liability." *Id.* Of course, this presupposes that had the insurer done so before trial, plaintiff would have been notified of the reservation of rights.

9. Perhaps, in order to avoid transmission of prejudicial information concerning the nature and extent of the non-cooperation giving rise to the reservation of rights, that information

need not be conveyed to the plaintiff. It might be deemed sufficient if the plaintiff is merely notified of the fact of the reservation of rights letter to the insured.

10. In *Horace Mann,* the defendant had failed to cooperate in several respects prior to the trial at which defendant failed to appear. Thus, the reservation of rights available to Horace Mann prior to the date of trial, was not available with respect to the non-cooperation in question before the trial date.